ISAAC A. STEWART, *Appellant*, v. DELAND-LAKE HELEN SPECIAL ROAD AND BRIDGE DISTRICT IN VOLUSIA COUNTY, FLORIDA, BY M. M. BOND, *et al.*, COUNTY COMMISSIONERS, *Appellees.*

Opinion filed February 15, 1916.

Rehearing denied March 2, 1916.

1. 'The maxim of *leges posteriores priores contrarias abrogant* is not applicable to cases where the precedent act is special or particular, and the subsequent act is general, the rule being that a later general act does not work any repeal of a former particular statute.

2. In the construction of general and special acts the maxim

*generalia specialibus non derogant* applies, and a general act will not be held to repeal or modify a special one embraced within the general terms of the general act, unless the general act is a general revision of the whole subject, or unless the two acts are, so repugnant and irreconcilable as to indicate a legislative intent that the one should repeal or modify the other.

3. One statute will not be held to repeal a former one unless there is a positive repugnancy betwen the two, or the latter was clearly intended to prescribe the only rule which should govern the case provided for, or it revises the subject matter of the former, or expressly repeals it.

4. The invariable rule of construction in respect to the repealing of statutes by implication is that the earliest act remains in force, unless the two are manifestly inconsistent with and repugnant to each other.

5. Laws should be construed with reference to the constitution and the purpose designed to be accomplished, and in connection with other laws *in pari materia,* though they contain no reference to each other.

6. Where one statute in comprehensive terms covers a subject and another later statute embraces only a particular part of the same subject, the two should be construed together unless a different legislative intent appears; and the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general terms of the more comprehensive statute to the extent only of the repugnancy, if any.

7. While statutes may be impliedly as well as expressly repealed, yet the enactment of a statute does not operate to repeal by implication prior statutes unless such is clearly the legislative intent.

8. An intent to repeal prior statutes or portions thereof may be made apparent when there is a positive and irreconcilable

repugnancy between the provisions of a later enactment and those of prior existing statutes. But the mere fact that a later statute relates to matters covered in whole or in part by a prior statute does not cause a repeal of the older statute.

9. If two statutes may operate upon the same subject without positive inconsistency or repugnancy in the practical effect and consequences, they should each be given the effect designed for them unless a contrary intent clearly appears.

10. Chapter 5762 of the Laws of 1907 has not been repealed by Chapter 6208 of the Laws of 1911, and there are no such conflicts in the provisions of the two Chapters that they cannot stand together and each be operative.

11. Our State Constitution is a limitation upon power; and unless legislation duly passed be clearly contrary to some express or implied prohibition contained in the Constitution, the courts have no authority to pronounce it invalid.

12. The reasonableness or justice of a deliberate act of the Legislature, the wisdom or folly thereof, the policy or motives prompting it, so long as the act does not contravene some portion of the organic law, are all matters for legislative consideration and are not subject to judicial control. The courts are bound to uphold a statute, unless it is clearly made to appear beyond a reasonable doubt that it is unconstitutional.

13. Where a statute does not violate the Federal or State constitution, the legislative will is supreme, and its policy is not subject to review by the courts, whose province is not to regulate, but to effectuate the policy of the law as expressed in valid statutes.

14. Great latitude should be accorded to the legislature in the exercise of its proper powers.

15. The Constitution does not define or amplify the term "county

purposes" for which counties may be authorized "to assess and impose taxes," and the Legislature, in exercising its appropriate lawmaking functions, may determine what is a "county purpose," and the courts are not authorized to render such determination ineffectual, unless some provision of the Constitution is violated, or unless the particular enactment can have no legal or practical relations whatever to any "county purpose."

16. Chapter 6208 of the laws of 1911 is not violative of sections 1 and 2 of Article VIII or of sections 3 and 5 of Article IX of the State Constitution, or of section 16 of Article III of such Constitution.

17. There are no such conflicts in the provisions of Chapter 6678 of the laws of 1913, as amended by Chapter 7145 of the Laws of 1915, and Chapter 6208 of the Laws of 1911, as amended by Chapter 6879 of the Laws of 1915, that such Chapters cannot stand together and each be operative.

18 The Legislature exercises plenary control over public highways, whether they be public county roads or streets in cities and towns.

19. Bounds of wide discretion should be accorded to the legislature in the interest of the public welfare.

20. There is no express provision in the State Constitution as to special assessments for local improvements, nor is there any express provision in such constitution as to the formation of taxing districts for particular purposes.

21. When the nature of the case does not conclusively fit it, the power to determine what shall be the taxing district for any particular burden is purely a legislative power, and is not to be interfered with or controlled, except as it may be limited or restrained by constitutional provisions.

22. Every presumption is in favor of the correctness of an order or decree rendered by a Circuit Judge, and the burden rests upon one appealing from such order or decree to overcome this presumption of law.

Appeal from Circuit Court, Volusia County; Jas. W. Perkins, Judge.

Order affirmed.

## *Statement.*

On the 11th day of September, 1915, the DeLand-Lake Helen Road and Bridge District in Volusia County, Florida, by M. M. Bond and the other county commissioners of such county, filed a petition under the provisions of Chapter 6868 of the Laws of Florida, (Acts of 1915, page 141), for the purpose of having validated a bond issue for the sum of $350,000.00 which had been voted upon and authorized at a special election held on the 13th day of July, 1915, under the provisions of Chapter 6208 of the Laws of Florida, (Acts of 1911, page 167), as amended by Chapter 6879 of the Laws of Florida, (Acts of 1915, page 182). The petition is quite lengthy, having a number of exhibits attached thereto and covering sixty-six typewritten pages. We do not copy the petition or exhibits, but shall refer to such portions thereof and make such excerpts therefrom as may seem necessary or desirable for a proper understanding of this opinion. Suffice it now to say that the petition sets forth in detail all the different steps taken both preceding and subsequent to such special election and alleges a strict compliance with all the statutory requirements. The transcript shows that such petition was presented to the Circuit Judge on the date that the same was filed, who on the same day made an order to the effect that the State of Florida, through the State Attorney for the Seventh Judicial Circuit, show cause before such Circuit Judge on the 9th day of October, 1915, "why

said bonds should not be validated and confirmed;" that a copy of such petition and such order of court be served upon such State Attorney at least eighteen days prior to the date fixed for such hearing and also "that prior to the hearing of said cause, the Clerk of this Court shall publish in a newspaper published in the said DeLand-Lake Helen Special Road and Bridge District, once each week for at least three weeks before said hearing, the first publication to be at least eighteen (18) days before said hearing, a notice addressed to the tax-payers and citizens of said DeLand-Lake Helen Special Road and Bridge District, requiring them at the time and place specified in this order for the hearing of said cause, to show cause, if any they have, why said bonds should not be validated and confirmed."

The transcript further shows that the State Attorney was served and also that publication was made in compliance with such order.

On the 9th day of October, 1915, Joseph H. Jones, Esquire, the State Attorney for the Seventh Judicial Circuit of Florida, filed his answer to such petition, which, omitting the caption and introductory paragraphs, is as follows:

"This respondent now and at all times reserving to himself the right of exception to the petition heretofore filed, for answer thereunto as provided by law, answering says:

As State Attorney of the Seventh Judicial Circuit of the State of Florida, the District in which DeLand-Lake Helen Special Road and Bridge District in Volusia County, Florida, is situated, he admits that a petition was filed in this Honorable Court on the 11th day of September, 1915, in and by M. M. Bond, J. LeRoy Harden, T. J. Murray, J. G. Cade and J. D. Maley, as Coun-

ty Commissioners of Volusia County, Florida, against the State of Florida, in the matter of the validation of bonds of the above named Special District,

That on the said 11th day of September, 1915, this Honorable Court issued its order to respondent, Joseph H. Jones, as State Attorney in and for the Seventh Judicial Circuit of the State of Florida, to show cause on the 9th day of October, 1915, why the bonds petitioned to be validated, should not be validated and confirmed.

That at the same time a copy of the said Order and Petition was served upon this respondent.

Respondent further shows that notice of this hearing has been published in the DeLand Weekly News, as required by law, and proof of same filed in these proceedings.

Respondent further answering says that he has carefully examined the said petition for the validation of the said bonds for the DeLand-Lake Helen Special Road and Bridge District in Volusia County, same being for the aggregate sum of $350,000.00. That the object of the said bonds is for the construction of roads and bridges in the said District, to be paid for from the proceeds of the sale of the said bonds.

Respondent further answering says that as shown by these proceedings, the petition required by law was filed before the County Commissioners of the said County of Volusia, State of Florida, on the 3rd day of May, 1915, as shown by verified copy annexed to the said petition, that same was signed by the requisite number of duly registered voters who were free-holders residing in the said territory proposed to be constituted as Special Road and Bridge District in Volusia County, and praying for the issuance of bonds. Also setting forth in general terms the directions and proposed roads and bridges, and

the location of the improvements contemplated in and by the said petition and the amount estimated necessary for the construction of the same, and further that the payment for the same was to be made from the proceeds of the sale of the bonds to be issued upon the said territory for these purposes.

The election was ordered by the said County Commissioners of Volusia County at the next meeting after the filing of the said petition, as shown by the petition and verified exhibit served upon this respondent. Notice of the election to be held in the said district was also given by publication, as provided by law, and same was duly published, designating the roads to be built and the bridges to be constructed, and the estimated cost of same, appointing inspectors and clerks for the conduct of the election, notice of which was published in the Volusia County Record, a weekly newspaper printed and published in DeLand, in the said proposed district in Volusia County, Florida, for five consecutive weeks, issues between June 11th and July 9th, 1915. Subsequent to the publication of the call for the said election, the returns were canvassed and it was found that the majority was in favor of constituting the said territory into a Special Road and Bridge District and constructing and paying for the proposed roads and bridges as specified in the said petition, by the sale of bonds which were voted in the sum of $350,000.00, said canvass being upon the 3rd day of August, 1915.

The territory was set apart by the County Commissioners in and for Volusia County and designated and declared as the DeLand-LakeHelen Special Road and Bridge District in Volusia County, Florida, and the boundaries of the said District were duly declared and

published in the Volusia County Record, a newspaper published in the said district, as provided by law.

That on the 7th day of September, 1915, a resolution providing for the issuance of road and bridge bonds for the said Special Road and Bridge District in the amount of $350,000.00 and prescribing the form and details of the said bonds, place of payment of the interest and principal thereof, was passed by the Board of County Commissioners in and, for Volusia County, Florida.

Respondent further answering says that the said County Commissioners in providing for the payment of the interest and principal of the said bonds so to be issued upon the said Special Road and Bridge District have followed the statute of 1911, to-wit: Chapter 6208 Laws of Florida.

Respondent further answering says that the object of the issuance of the said bonds is for a legal purpose, to-wit, the construction and building of roads and bridges in the said district.

That the issuance of the said bonds was duly approved by a majority of the qualified voters at the said election duly called.

That he has ascertained that the assessed value of the taxable property in said district for 1914 is $1,929,000.00.

That the bonded indebtedness is none.

The present issue is for $350,000.00, which makes the total on the District $350,000.00, drawing interest at 6% per annum.

That the population of the said DeLand-Lake Helen Special Road and Bridge District is estimated at 7,500.

Respondent further answering says that the conditions required to be performed for the issuance of these bonds have been duly performed, and, that he sees no

reason why the said bonds should not be validated by the order and decree of this court.

And now, having fully answered, he prays to be hence dismissed in these proceedings."

To such answer was attached the following exhibit: "State of Florida,
County of Volusia.

I, Saml D. Jordan, Clerk of the Circuit Court in and for the State and County aforesaid, hereby certify that the assessed valuation of the real estate, personal property, railroad, telegraph and telephone lines included in the boundaries of the DeLand-Lake Helen Special Road and Bridge District for the year 1914, as calculated by the Tax Assessor is $1,929,000.00.   I further certify that there is no other bonded indebtedness upon the said district than the issue of $350,000.00 which  is now in process of validation.

The estimated population of the said district is 7,500.

Witness my hand and official seal this 8th day of October, A. D. 1915.

(Seal.)                                    SAML D. JORDAN,
                                                Clerk Circuit Court."

On the 9th day of October, 1915, Isaac A. Stewart filed the following paper which he designates "Petition for Intervention, Answer and Demurrer:"

"Now comes Isaac A. Stewart, by his attorney, Tom B. Stewart, not waiving the many imperfections  and defects of the petition filed herein, for answer, objection and demurrer thereto, does represent unto the Court as follows:

That he is a citizen of the County of Volusia and State of Florida, residing in the City of DeLand; that he is the owner of much taxable property in the County of Volusia and State of Florida, and that he owns sev-

eral pieces of property in the City of DeLand upon which he pays taxes  and which is within  the DeLand-Lake Helen Special Road and Bridge District of Volusia County, Florida, according to metes and bounds mentioned in  petition  herein, some  of which  land is  upon the roads proposed to be paved under this bonding issue; and for special objection to the granting of the prayer of petitioner, DeLand-Lake Helen Special Road and Bridge District, the said Isaac A. Stewart does most respectfully submit unto the court the following objections to the validation of said bonds:     .

First:   That section 6208, Laws of Florida, Acts of 1911, under the provisions of which the bonds are alleged to have been voted, is unconstitutional and void.

Second:   That section 6208, Laws of Florida, Acts of 1911, under the provision of which act the bonds are alleged in the petition to have been voted, is inapplicable to Volusia County, as the construction and repairing of all roads and bridges in Volusia County, as well as the levying of special taxes and the limitation as to the amount Volusia County can tax for road and bridge purposes, is governed by special act of the legislature of Florida, to-wit, Section 5762, Laws of Florida, Acts of 1907, which is now in force and has not been repealed; and Section 6208, Laws of Florida, 1911, has no effect in Volusia County.

Third:   That Section 5762, Laws of Florida, Acts of 1907, regulates the manner in which roads and bridges shall be constructed in Volusia County, Florida, as well as the manner in which the revenue shall be derived for constructing and repairing the same, as well as imposing a limitation as to the amount that can be assessed against the property of Volusia County.

Fourth:   That the petition shows on its face that the

proceedings on which the bonds are issued are illegal and void.

Fifth: That said petition shows on its face that the petition for the special bond election did not set out in general terms a description of the roads and bridges to be constructed.

Sixth: That the petition shows on its face that the petition for the calling of the special bond election did not set out in general terms a description and a proposed location of the roads and bridges to be constructed, together with amount estimated as being necessary, with which to pay for the construction of same.

Seventh: That said petition shows on its face that petition for the special bond election did not state the kind of bonds to be issued, the number of years which they were to run or the amount of interest the proposed bonds were to bear, for failure of which said bond issue is illegal and void.

Eighth: That said petition shows on its face that the notice of the special bond election did not set out or give a general description of the roads and bridges proposed to be constructed, but did give a description of some five different materials which might be used.

Ninth: That said petition shows on its face that the notice for the bond election did not set out or give a general description of the roads and bridges proposed to be constructed, together with the estimated cost of same, and the manner in which payment for the construction of same was to be made.

Tenth: That said petition shows on its face that the notice of the bond election did not give any definite or general description of the roads and bridges to be constructed and did in several instances have an alternative description as to what material would be used in the construction of certain roads.

Eleventh: That said petition shows on its face that the notice of bond election did not state the kind of bonds that were to be issued, the number of years which they were to run, or the interest they should bear.

Twelfth: That this court is without jurisdiction to grant the relief sought in the petition.

Thirteenth: That the petition does not make or state such facts as entitled the bonds sought to be validated to be validated.

Fourteenth: That said petition shows on its face that said bond issue is illegal and void, because they are to be issued to build roads and streets within the corporate limits of the City of DeLand, a municipal corporation existing under the laws of Florida, which by its charter is given exclusive control over the streets within its limits, which charter is now in full force and effect and has not been abolished or the charter thereof changed or modified.

Fifteenth: That because of many irregularities in the petition for bond election, the calling and notice of bond election, etc., the prayer of petition should not be granted.

It is prayed that Isaac A. Stewart be given advantage of the above and foregoing objections numbered one to fifteen inclusive, as fully as if made by demurrer or otherwise.

Wherefore Isaac A. Stewart prays that he be allowed to intervene in this suit, and that he be made a party respondent (or defendant) to the petition filed herein, and that the petition be dismissed and the relief sought denied."

This paper has appended thereto the affidavit of the intervener to the effect that "all the facts set up by him as to his ownership of property in Volusia County, Florida, and to his citizenship therein in the above and fore-

going petition for intervention and answer are true, and that so much of the above and foregong answer and objections as is in effect a demurrer, is interposed in good faith and not for the purpose of delay."

On the 9th day of October, 1915, the Circuit Judge made an order from which we copy the following: "It is thereupon ordered, adjudged and. decreed that said Isaac A. Stewart be made a party respondent to said petition, and his petition for intervention, answer, objection and demurrer be made a part of the record in this matter."

Also on the 9th  day of October, 1915, the Circuit Judge rendered the following order:

"This day this cause coming on to be heard upon the original petition filed herein and the answer of the State of Florida, by the State Attorney thereto, and the petition for intervention, answer, objection and demurrer of Isaac A. Stewart, and the same having been submitted to the Court for final hearing by the respective parties hereto, and the court having determined all the questions of law and of fact, in said cause, upon consideration thereof the court doth find that the equities in said cause are with the petitioner, and that the prayer of the said petition should be granted, and that all proceedings had or taken in connection with the issuance of the bonds of DeLand-Lake Helen Special Road and Bridge District in Volusia County, Florida, are regular and legal;

It is therefore ordered, adjudged and decreed that the bonds referred to and described in said petition and the other papers herein are hereby validated and confirmed and when said bonds are duly issued, sold and delivered, the same  shall  be  valid and  legal obligations against the said DeLand-Lake Helen Special Road and Bridge District in Volusia County, Florida, and this decree shall be forever conclusive as to the validity of the

said bonds against the said district and against the taxpayers and citizens thereof in the event  no appeal is taken from this decree within twenty days from the date of the signing of the same, or in the event that if such appeal be taken, this decree shall be confirmed by the Supreme Court, and in case no appeal shall be taken as aforesaid, or if taken and this decree is confirmed by the Supreme Court then and in that event the validity of said bonds shall never be called in question in any court in this State.

It is further ordered, adjudged and decreed that all proceedings heretofore had and taken in connection with the issuing of said bonds are regular, legal and proper."

From this order Isaac A. Stewart has entered his appeal and assigned the following errors:

"1.   The court erred in finding that the equities in said cause are with the petitioner, and that the prayer of the said petition should be granted, and that all proceedings had or taken in connection with the issuance of the bonds of the DeLand-Lake Helen Special Road and Bridge District in Volusia County, Florida, are regular and legal.

2.   The court erred in decreeing that the bonds referred to and described in said petition and the other papers herein are hereby validated and confirmed, and when said bonds are duly issued, sold and delivered the same shall be valid and legal obligations against the said DeLand-Lake Helen Special Road and Bridge District in Volusia County, Florida, and this decree shall be forever conclusive as to the validity of the said bonds against the said district and against the taxpayers and citizens thereof, in the event no appeal is taken from this decree within twenty days from the signing of the same, or in the event that such appeal be taken, this decree shall be

confirmed by the Supreme Court; and in case no appeal shall be taken, as aforesaid, and if taken and this decree be confirmed by the Supreme Court, then, in that event, the validity of said bonds shall never be called in question by any court of this State.

3. The court erred in decreeing that all proceedings heretofore had and taken in connection with the issuing of said bonds are regular, legal and proper.

4. The court erred in validating the bonds sought to be validated in the petition."

*Tom B. Stewart,* for Appellant;

*Landis, Fish & Hull,* for Appellees.

SHACKLEFORD, J., (*after stating the facts.*)—Voluminous briefs have been filed by the respective counsel in this cause, in which numerous authorities are cited, and we have also been favored with oral arguments. We shall treat such points as seem to be necessary for a proper disposition of the case.

Instead of arguing the assignments as made in detail, the appellant has announced that he relies for a reversal of the order from which the appeal was entered upon four propositions of law, the first of which he states in his brief as follows:

"The first proposition is that Chapter 5762 Acts of the year 1907, entitled: 'An Act for the improvement of public roads and bridges in Volusia County, providing for the employment of convicts under certain conditions, and for the levy of a road and bridge tax and the means of its expenditure' is now in force and effect in Volusia County, Florida, and that Chapter 6208, laws of Florida, Acts of 1911, under the provision of which act the bonds are alleged in the petition to have been voted, is inapplicable to Volusia County, as the construction and

repair of *all* roads and bridges in Volusia County, as well as the levying of Special taxes and the limitation as to the amount Volusia County can tax for road and bridge purposes is governed by special act of the Legislature of Florida, to-wit, Section 5762, Laws of Florida, Acts of 1907, which is now in force and has not been repealed, and that Section 6208, Laws of Florida, 1911, has no effect in Volusia County, and that Section 5762, Laws of Florida, Acts 1907, regulates the manner in which all roads and bridges shall be constructed in Volusia County, Florida, as well as the manner in which the revenue shall be derived for constructing and repairing the same, as well as imposing a limitation as to the amount that can be taxed against the property in Volusia County."

Chapter 5762 of the Laws of Florida, (Acts of 1907, page 291), which the appellant contends has never been repealed, either directly or by necessary implication, therefore remains in full force and effect bears the following title:

"*An Act* for the improvement of the Public Roads and Bridges in Volusia County, Providing for the Employment of Convicts Under Certain Conditions and for the Levy and Collection of a Road and Bridge Tax, and the Means of Its Expenditure."

As is apparent at a glance, this is a local law, relating to Volusia County in the particulars and for the purposes therein specified, and does not undertake to provide for or authorize the issuance of any bonds for road and bridge purposes but relates only to the levy and collection of a road and bridge tax, and the means of its expenditure. Chapter 6208 of the Laws of Florida (Acts of 1911, page 167), is a general law, applicable throughout the State, being entitled:

"*An Act* to Authorize the Counties of the State of Florida to Create and Constitute Special Road and Bridge Districts, Within Said Counties; and to Issue Bonds and Levy and Collect a Special Road and Bridge Tax With Which to Pay for the Construction, Repair and Maintenance of the Roads and Bridges Within Said Special Roads and Bridge Districts."

Section 1 thereof expressly provides that "whenever residents of any territory embraced wholly or in part in one or more Road Districts, as at that time constituted in any county of the State of Florida, desire to have such territory constituted into a 'Special Road and Bridge District' and to have constructed within said Special District, permanent roads and bridges, they shall present to the Board of County Commissioners, a petition," etc. We would also call attention to Sections 15 and 16 of such Chapter 6208, which are as follows:

"Sec. 15. That after the construction of the roads and bridges authorized by the Special Election, the Board of County Commissioners shall estimate from year to year, the amount necessary to keep in repair and, maintain the roads and bridges within said Special Road and Bridge District; and shall assess annually all taxable property within the said Special District, a tax not exceeding ten mills on the dollar, which said tax shall be collected and paid into the Special Road and Bridge Fund of that Special District, and used solely by the County Commissioners for the repair and maintenance of the roads and bridges within said Special Road and Bridge District.

Sec. 16. That any Special Road and Bridge District created under authority of this Act, shall be entitled to receive for the repair and maintenance of the Roads and Bridges in said District, its due proportion of the Coun-

ty Tax levied and collected upon the taxable property of the county for general road purposes; and, the Special Tax provided for in Section 15 of this Act, shall be levied, and collected on the taxable property in said Special District, only for such repair and maintenance of the Roads and Bridges in said Special District, that cannot be paid for from its proportion of the general County Road Tax."

Section 18 of such Chapter expressly repeals all laws and parts of laws in conflict therewith.

As early as the case of Luke v. State, 5 Fla. 185, this Court held: "The maxim of *leges posteriores priores contrarias abrogant* is not applicable to cases where the precedent act is special or particular, and the subsequent act is general, the rule being that a later general act does not work any repeal of a former particular statute." In the body of the opinion on page 194 it is said: "As a general rule, it is true, that every affirmative statute is a repeal by implication, of a precedent affirmative statute, so far as it is contrary thereto; *leges posteriores priores contrarias abrogant*—but to apply this maxim of the law, it is necessary that the two acts be in conflict which is not the case here." The opinion then proceeds to state, "applying another rule in the interpretation or construction of statutes, the later general act does not work any repeal of a former particular act." Likewise in State v. Southern Land and Timber Co., 45 Fla. 374, 33 South. Rep. 999, we held: "In the construction of general and special acts the maxim *generalia specialibus non derogant* applies, and a general act will not be held to repeal or modify a special one embraced within the general terms of the general act, unless the general act is a general revision of the whole subject, or unless the two acts are so repugnant and irreconcilable as to indicate

a legislative intent that the one should repeal or modify the other."

In State *ex rel.* Gonzalez v. Palmes, 23 Fla. 620, 3 South. Rep. 171, we held: "One statute will not be held to repeal a former one unless there is a positive repugnancy between the two, or the latter was clearly intended to prescribe the only rule which should govern the case provided for, or it revises the subject matter of the former, or expressly repeals it." See also the discussion in City of Tampa v. Prince, 63 Fla. 387, 58 South. Rep. 542. As we said in Smith v. Milton, 61 Fla. 745, text 764, 54 South. Rep. 719, "The invariable rule of construction in respect to the repealing of statutes by implication, is, that the earliest act remains in force, unless the two are manifestly inconsistent with and repugnant to each other." In State *ex rel.* Loftin v. McMillan, 55 Fla. 246, 45 South. Rep. 882, we held as follows:

"Laws should be construed with reference to the constitution and the purpose designed to be accomplished, and in connection with other laws *in pari materia,* though they contain no reference to each other.

Where one statute in comprehensive terms covers a subject and another later statute embraces only a particular part of the same subject, the two should be construed together unless a different legislative intent appears; and the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general terms of the more comprehensive statute to the extent only of the repugnancy if any."

Also see Peninsular Industrial Insurance Co. v. State, 61 Fla. 376, 55 South. Rep. 398.

In State v. County of Gadsden, 63 Fla. 620, 58 South. Rep. 232, we held:

"While statutes may be impliedly as well as express-

12

ly repealed, yet the enactment of a statute does not operate to repeal by implication prior statutes unless such is clearly the legislative intent.

An intent to repeal prior statutes or portions thereof may be made apparent when there is a positive and irreconcilable repugnancy between the provisions of a later enactment and those of prior existing statutes. But the mere fact that a later statute relates to matters covered in whole or in part by a prior statute does not cause a repeal of the older statute.

If two statutes may operate upon the same subject without positive inconsistency or repugnancy in their practical effect and consequences, they should each be given the effect designed for them unless a contrary intent clearly appears."

The discussion in the opinion rendered in this case is instructive and helpful in dealing with the proposition which we are now considering.

We have carefully examined the different contentions of the appellant in support of this first proposition upon which he relies for a reversal of the order from which he has appealed, in the light of the decisions of this court which we have cited, and are of the opinion that such proposition in its entirety cannot be sustained. We think that the appellant is right in claiming that Chapter 5762 of the Laws of Florida has not been repealed by Chapter 6208 of the Laws of Florida, and upon this point we find that the appellee concurs with appellant. We do not find any such conflicts in the provisions of the two Chapters that they cannot stand together and each be operative. If as a matter of fact such conflicts exist that the provisions of each Chapter cannot be enforced, the appellant has not succeeded in pointing out and demonstrating the same.

The second proposition upon which the appellant relies is stated in his brief in the following language:

"The second proposition is that Chapter 6208, Laws of Florida, Acts of 1911, is unconstitutional and void, in that it violates that provision of the Constitution of the State of Florida, providing for a uniform system of taxation throughout the State, county and city, as required by Sections 1 and 2 of Article 8, of the Constitution, Sections 3 and 5 of Article 9 of the Constitution, which provides that counties shall be political divisions of the State, and that the Legislature shall provide for a uniform and equal rate of taxation, and that the Legislature shall authorize the several county and incorporated cities and towns in the State to assess and impose taxes for county and municipal purposes and for no other purposes, and all property shall be taxed on the principles established for State taxation—that is, a rate uniform and equal throughout the State, throughout the county or throughout the municipality."

Sections 1 and 2 of Article VIII of the State Constitution, which it is claimed are violated by Chapter 6208 are as follows:

"Section 1. The State shall be divided into political divisions to be called counties.

Section 2. The several counties as they now exist are hereby recognized as the legal political divisions of the State."

Sections 3 and 5 of Article IX of the State Constitution, which it is contended are also violated by such Chapter 6208, read as follows:

"Section 3. No tax shall be levied except in pursuance of law."

"Section 5. The legislature shall authorize the several counties and incorporated cities or towns in the State

to assess and impose taxes for county and municipal purposes, and for no other purposes, and all property shall be taxed upon the principles established for State taxation. But the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits. The legislature may also provide for levying a special capitation tax, and a tax on licenses. But the capitation tax shall not exceed one dollar a year and shall be applied exclusively to common school purposes."

We fail to see wherein Chapter 6208 violates in any way the provisions of Sections 1 and 2 of Article VIII of the State Constitution and we are not enlightened upon this point by the appellant either in his brief or oral argument, therefore we content ourselves with simply announcing that no violation of such sections has been made to appear to us. Neither has the appellant succeeded in demonstrating wherein the provisions of either Section 3 or Section 5 of Article IX of the State Constitution have been violated by such Chapter. As we held in State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929, following prior decisions of this court therein cited, "Our State Constitution is a limitation upon power, and unless legislation duly passed be contrary to some express or implied prohibition contained in the constitution, the courts have no authority to pronounce it invalid." We likewise held in this case: "The reasonableness or justice of a deliberate act of the Legislature, the wisdom or folly thereof, the policy or motives prompting it, so long as the act does not contravene some portion of the organic law, are matters for legislative consideration and are not subject to judicial control. The courts are bound to uphold a statute, unless it is

clearly made to appear beyond a reasonable doubt that it is unconstitutional."

In Davis v. Florida Power Co., 64 Fla. 246, 60 South. Rep. 759, Ann. Cas. 1914 B 965, we held: "Where a statute does not violate the Federal or State constitution, the legislative 'will is supreme, and its policy is not subject to review by the courts, whose province is not to regulate, but to effectuate the policy of the law as expressed in valid statutes." Also see McNeil v. Webeking, 66 Fla. 407, 63 South. Rep. 728; City of Jacksonville v. Bowden, 67 Fla. 181, 64 South. Rep. 769, Ann. Cas. 1915 D 99; Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775, 52 L. R. A. (N. S.) 287; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282; Noble v. State, 68 Fla. 1, 66 South. Rep. 153; Jordan v. Duval County, 68 Fla. 48, 66 South. Rep. 298; Peninsular Casualty Co. v. State, 68 Fla. 411, 67 South. Rep. 165; Pinellas Park Drainage Co. v. Kessler, 69 Fla. 558, 68 South. Rep. 668; State v. Phillips, 70 Fla. 340, 70 South. Rep. 367; Ex Parte Powell, 70 Fla. 363, 70 South. Rep. 293; Ex Parte Pricha, 70 Fla. 265, 70 South. Rep. 406. As we said in Seaboard Air Line Ry. v. Simon, 56 Fla. 545, text 551, 47 South. Rep. 1001, 20 L. R. A. (N. S.) 126, 16 Ann. Cas. 1234, "Great latitude should be accorded to the legislature in the exercise of its proper powers."

In Jordan v. Duval County, 68 Fla. 48, 66 South. Rep. 298, we held: "The Constitution does not define or amplify the term 'county purposes' for which counties may be authorized 'to assess and impose taxes,' and the Legislature, in exercising its appropriate law-making functions, may determine what is a 'county purpose,' and the courts are not authorized to render such determination ineffectual, unless some provision of the Con-

stitution is violated, or unless the particular enactment can have no legal or practical relations whatever to any 'county purpose.'" See also Cotton v. County Commissioners of Leon County, 6 Fla. 610; Stockton v. Powell, 29 Fla. 1, 10 South. Rep. 688, 15 L. R. A. 42; County Commissioners of Duval County v. City of Jacksonville, 36 Fla. 196, 18 South. Rep. 339, 29 L. R. A. 416.

We fail to see wherein any of the sections of the two Articles of the State Constitution which we have copied above and upon which the appellant relies to support his contention have been violated by Chapter 6208 of the Laws of Florida. As we have previously said, the appellant, upon whom the burden rests, has not succeeded in convincing us that any of the provisions of such Chapter which he has attacked are in conflict with the State Constitution. We think that the reasoning in the cases which we have just cited effectually disposes of this contention of the appellant adversely to him. Especially is this true of Pinellas Park Drainage District v. Kessler, *supra*, and Jordan v. Duval County, *supra*.

It is also suggested by the appellant in his brief, though not strenuously insisted upon, that Chapter 6208 of the Laws of Florida is also violative of Section 16 of Article III of the State Constitution, which reads as follows: "Each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only; but in such a case the act, as revised, or section, as amended, shall be re-enacted and published at length."

We have often had occasion to construe this section and what we have said repeatedly in the different opin-

ions which we have rendered makes further discussion unnecessary. We content ourselves with referring to State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South, Rep. 929, wherein numerous prior decisions of this court are cited, and the recent cases of Ex Parte Pricha, 70 Fla. 265, 70 South. Rep. 406; Ex Parte Powell, 70 Fla. 363, 70 South. Rep. 392; Ex Parte Gilletti, 70 Fla. 442, 70 South. Rep. 446; and stating that under the principles announced in these cases this contention of the appellant cannot be upheld.

The third proposition of law upon which the appellant relies, as set forth in his brief, is somewhat lengthy, and we do not consider it necessary to copy it in full. In effect, it is contended that the bond issue in question is illegal for the reason that it is proposed to construct roads and streets from the proceeds arising from the sale thereof within the corporate limits of the City of De-Land, whereas Chapter 6678 of the Laws of Florida, Vol. 2 of the Acts of 1913, page 298, being entitled, *"An Act* to Abolish the Present Municipal Government of DeLand, Volusia County, Florida, and to Organize a New City Government for the Same and to Provide for Its Jurisdiction and Powers," gives such City of De-Land exclusive control over the streets within its limits, whereas if such bond issue is permitted to stand certain streets within the city will be paved from the proceeds derived from the levy of a tax on property outside of the limits of the city together with property situated within such limits. It is contended that the bond issue which is here questioned violates Sections 20, 51 and 52 of such Charter Act; Chapter 6678. Section 20 is quite lengthy, setting forth the powers conferred upon the City Council of the City of DeLand. The portion thereof upon

which the appellant relies and which he has copied in his brief is as follows:

"The City Council shall * * * within the limitation of this act have power by ordinance to levy and collect taxes upon all property, privileges and professions taxable by law for State purposes * * * *to regulate and provide for the construction of streets and paving the same,* and for the construction and repairs of sidewalks and foot pavements, and if the owner or owners or agents, of any lot or parcel of land abutting thereon, or thereto, shall fail to comply with the provisions of any ordinance or resolution of the City Council ordering any such improvements within such time as may be prescribed thereby, the City Council or any person or persons duly authorized by them may contract for such construction, improvements or repairs, and the city shall pay for the same and the amount so paid shall be a lien on said lot or parcel of land, which may be enforced by a suit at law or equity, and the amount recovered against the owner or owners by suit before the Circuit Court of the County * * * . The City Council may by ordinance or resolution provide for the payment of any part of the cost of such work or improvements out of the general tax. *The reasonable cost of such construction, improvement or repair shall be assessed against said property, and shall be a lien thereon.* * * * to take and appropriate private grounds and private property in manner and form provided by law for the condemnation for widening streets or parts thereof, or for extending the same, or for laying out any streets, avenues, alleys or squares, parks or promenades, where the public convenience may require it, *and to assess the costs and expenses pro rata for such improvement upon the property specially benefited thereby;* to require parties or their agents owning prop-

erty within the city to bring the same to a topographical level by filling or excavations as shall be necessary, the city having and exercising the same right of lien and its enforcement as provided in case of sidewalks and pavements when said work or excavations or filling in shall be done by the city."

Sections 51 and 52 of such Chapter are as follows:

"Sec. 51.   All property, real and personal, in the City of DeLand, not expressly exempted by the laws of the State, shall be subject to taxation by the City of De-Land.

Sec. 52.   The City shall have the power to make its own assessment of taxes."

As is also stated by the appellant in his brief, this Chapter 6678 has not been repealed, or modified, except by Chapter 7145 of the Laws of Florida (Vol. 2 of Acts of 1915, page 448,) in certain particulars which do not affect the point now under consideration.   In effect, this Charter Act of the City of DeLand simply confers the powers usually conferred by the Legislature upon municipalities in this State, setting forth such powers somewhat in detail.   It will be borne in mind, as we have previously said, that Chapter 6208 of the Laws of Florida was enacted by the Legislature at its session in 1911, and was amended in certain important particulars by Chapter 6879 of the Laws of Florida, enacted by the Legislature at its session in 1915, while Chapter 6678, forming the Charter Act of the City of DeLand was enacted in 1913 and was amended in certain respects by Chapter 7145 enacted in 1915.

It seems to us that what we have said in discussing the first proposition of law advanced by the appellant practically disposes of the third proposition adversely to his contention.   We see no conflict in Chapter 6208, as

amended by Chapter 6879, and Chapter 6678, in any of the particulars pointed out by the appellant. We are all the more strengthened in this conclusion by the provisions contained in Section 7 of Chapter 6208, which section is as follows:

"That the construction, repair and maintenance of the roads and bridges in said Special Road and Bridge District or Districts shall at all times, be subject to the supervision and control of the Board of County Commissioners. And the said Board of County Commissioners is hereby granted and empowered with the right of Eminent Domain, whenever it may become necessary to exercise the same, for the purpose of opening up, widening or straightening roads, or constructing bridges, or for the purpose of obtaining earth, rock, stone, shell, marl, clay, timber, or other material to be used in the construction, repair or maintenance of the roads and bridges as provided for in this Act. And whenever any of the roads or bridges proposed to be constructed under the provisions of this Act, are located within the territorial boundaries of one or more incorporated cities or towns, the County Commissioners shall have the right of Eminent Domain and control over such streets or territory within such municipality as may be necessary for constructing and maintaining the public highways and bridges and the approaches thereto as provided for in the Special Election held under the authority of this 'Act."

We held in State v. Jacksonville St. R. R. Co., 29 Fla. 590, 10 South. Rep. 590, "The dominant control of highways and streets is vested in the legislative power of the State," and in County Commissioners of Duval County v. City of Jacksonville, 36 Fla. 196, 18 South. Rep. 339, 29 L. R. A. 416, we held, "The Legislature

exercises plenary control over public highways, whether they be public  county roads  or streets  in cities and towns."   The last cited case is quite instructive upon several points involved in the instant case.   We would also refer to our discussion in Hayes v. Walker, 54 Fla. 163, 44 South. Rep. 747, as to "the bounds of wide discretion that should be accorded to the legislature in the interest of the public welfare."   Also see Skinner v. Henderson, 26 Fla. 121, 7 South. Rep. 464, 8 L. R. A. 55, and State v. County Commissioners of Putnam County, 23 Fla. 632, 3 South. Rep. 164.

As we said in Edwards v. City of Ocala, 58 Fla. 217, text 219, 50 South. Rep. 421, "There is no express provision in the constitution as to special assessments for local improvements," which we quoted with approval in Anderson v. City of Ocala, 67 Fla. 204, text 212, 64 South. Rep. 775, 52 L. R. A. (N. S.) 287.   It is further true that there is no express provision in the constitition as to the formation of taxing districts for particular purposes.   As is well said by Judge COOLEY on page 234 in his valuable work on Taxation (3rd ed.), "When the nature of the case does not conclusively fit it, the power to determine what shall be the taxing district for any particular burden is purely a legislative power, and is not to be interfered with or controlled, except as it may be limited or restrained by constitutional provisions." This principle is well supported by the authorities cited in the notes.   It is further true, as is said by the distinguished author on page 238 of the work cited, "It is not essential that the political districts of the State shall be the same as the taxing districts, but special districts may be established for special purposes, wholly ignoring the political divisions."   We would also refer to the several pages following this statement, and the authorities cited

in the respective notes.  Also see 27 Amer. & Eng. Ency. of Law (2nd ed.) pages 911 to 915, and the authorities there cited.

The fourth and last proposition upon which the appellant relies is stated in his brief as follows:

"The fourth proposition is that the said bond issue is illegal and void, because the petition calling for the special bond election did not set out in general terms a description and a proposed location  of the roads  and, bridges to be constructed, together with the amount estimated as being necessary with which to pay for the construction of same, because said petition calling for a special election did set out and give a general description of some five or more different materials of which said roads might be constructed, and because no general description of the width of the bridges was given or the consistency of the materials to be used in their construction, and further, because said petition for special bond election did not state the kind of bonds to be issued, the number of years they were to run, or the amount of interest the proposed bonds were to bear, for failure of which said bond issue is illegal and void, which same objections as have been above stated may be addressed to the order of the county commissioners calling for a bond election and a notice of election for bonding."

We have already extended this opinion to a greater length than is desirable, so shall not discuss in detail the various and sundry respects in which it is contended by the appellant that the bond issue is illegal and void for failure to comply with the statutory requirements.  Suffice it to say that we have carefully read the transcript of the record, bearing in mind these contentions of the appellant and after so doing are of the opinion that there has been a substantial compliance with such statutory re-

quirements. The State Attorney in his answer to the petition, which we have copied above, recites that he has carefully examined all of the proceedings and finds that all of the requisites have been performed and complied with and that he sees no reason why such bonds should not be validated, while the Circuit Judge in his decree found that "all proceedings heretofore had and taken in connection with the issuing of said bonds are regular, legal and proper."

As we have held time and again, every presumption is in favor of the correctness of an order or decree rendered by a Circuit Judge, and that the burden rests upon one appealing from such order or decree to overcome this presumption of law. We think that the appellant has failed to meet this burden.

Order affirmed.

TAYLOR, C. J., and WHITFIELD and ELLIS, JJ., concur.

COCKRELL, J., takes no part.