## DICKINSON, et al v. McNAYR, et al.
### No. 61 C 10286.

Circuit Court, Dade County.
October 2, 1961.

Norman Francis Haft and James T. Gordon, both of Miami, for plaintiffs.

Darrey A. Davis, County Attorney, for defendants.

ROBERT L. FLOYD, Circuit Judge.

This cause filed on September 27, 1961, was set for hearing before the undersigned on September 29, 1961, upon plaintiffs' application for an injunction. At the hearing the defendants filed a motion to dismiss and answer. The motion to dismiss was not argued at the hearing by counsel for the defendants, but the court proceeded to take testimony on the application for a temporary injunction prayed for in plaintiffs' complaint. The court has read and considered the pleadings, the evidentiary exhibits, and has heard and reviewed the testimony and arguments of counsel.

This taxpayer's suit charges that the county manager and the board of county commissioners are unlawfully expending county funds and utilizing county facilities and equipment to persuade the electors of Dade County to vote against the proposed "McLeod Amendment" to the Home Rule Charter at the special election to be held on October 17, 1961. Plaintiffs pray for an injunction prohibiting the defendants from expending county funds for unlawful purposes, and for the entry of a money judgment against the defendants for unlawful expenditures heretofore made.

The defendants deny that there has been any unlawful expenditure of county funds, and that the expenditures complained of constituted lawful utilization of funds for county purposes.

Section 5 of article IX of the Florida constitution requires the legislature to authorize the counties to assess and impose taxes for county purposes and for no other purposes. The legislature may delegate to the county the authority to assess and impose taxes for county purposes when acting through its county commissioners, who are constitutional officers elected by the people. Of course, the action taken by the county pursuant to such authority, particularly where the authority is general, must be legal and reasonable. County funds may be expended only for county purposes. However, the constitution does not attempt to provide a definition of "county purpose". The courts have formulated no generally accepted definition, but leave each case involving the question to be decided as it may arise. Commissioners of Duval County v. City of Jacksonville, 36 Fla. 196, 18 So. 339. The power to determine what constitutes a "county purpose" constitutes the exercise of a legislative function, subject to judicial review. State v. Escambia County, Fla. 1951, 52 So. 2d 125.

As stated by the Supreme Court of Florida in Stewart v. De-Land-Lake Helen Special Road & Bridge District, 71 Fla. 158, 71 So. 42 —

"The constitution does not define or amplify the term 'county purposes' for which counties may be authorized 'to assess and imposes taxes' and the legislature, in exercising its appropriate lawmaking functions, may determine what is a 'county purpose', and the courts are not authorized to render such determination ineffectual, unless some provision of the constitution is violated, or unless the particular enactment can have no legal or practical relation whatever to any 'county purpose'."

The expenditure of county funds for other than county purposes would be in conflict with the manifest purpose and intent of the provisions of section 5 of article IX of the Florida constitution. Whether an expenditure made from funds derived by a county from taxes is or is not for county purposes, is to be determined by the court from the facts and circumstances of each particular case. Board of Commissioners of Escambia County v. Board of Pilot Commissioners, 52 Fla. 197, 42 So. 697.

Plaintiffs contend that any expenditure of funds or utilization of county equipment and facilities or the time of county officials and employees in opposition to the "McLeod Amendment" is unlawful in that the same violates the constitutional inhibition against the use of county funds for other than county purposes.

Plaintiffs argue that the publication of "A Message from the County Manager" relating to the "reassessment" charter amendment election held on August 15, 1961; a meeting of county employees called by the county manager and held at the Dade County Auditorium; the actions of the county manager in accepting speaking engagements before various civic organizations and other groups of citizens and discussing the "McLeod Amendment"; and the reprinting of the views and comments of the League of Women Voters of Metropolitan Dade County concerning the "McLeod Amendment" in the September 15, 1961 issue of the Metro Bulletin, the official county publication, were all motivated by political considerations designed to influence electors to vote against the "McLeod Amendment" at the special election of October 17, 1961, and constitute unlawful expenditures of county funds or unlawful utilization of county facilities and county officials' time.

The plaintiffs are primarily concerned with the re-printing of the views and comments of the League of Women Voters of Metropolitan Dade County concerning the "McLeod Amendment" in the September 15, 1961 issue of the Metro Bulletin. The Metro Bulletin is the official publication of the county government published and distributed with county funds. Its stated purpose is to provide to civic organizations and citizens information con-

cerning the progress of metropolitan government. The compilation and distribution of factual information (however favorable) concerning the county government clearly constitutes a proper and lawful county purpose for which county funds may be appropriately expended. All issues of the Metro Bulletin published to date were tendered into evidence, and the court has carefully reviewed all such publications. The September 15, 1961 issue of the Metro Bulletin reprinted in full a comparison of the present Home Rule Charter and the proposed "McLeod Amendment" prepared by the League of Women Voters of Metropolitan Dade County. Such comparison expressed the views and comments of the League of Women Voters, and the opinions expressed therein are most unfavorable to the "McLeod Amendment". The following statement is set forth as "Final Comment" —

"The proponents of the McLeod Amendment claim that its adoption would return Dade County to the pre-metro days of the 'old five-man commission, just like the other 66 counties in Florida'. A closer look, however, reveals that McLeod's charter does not set up the old county government, but rather introduces a new concept of government, whereby the tremendous powers granted by our Home Rule Charter, would be given to only five men, three of whom could become the ruling triumvirate. This is more uncurbed power than is given to any other elected official in the nation. An undemocratic and therefore, undesirable form of county government would result."

The publication of this matter is out of character with the aims and objectives of the Metro Bulletin as exemplified by all previous issues. The propriety of reprinting and distributing the views and comments of the League of Women Voters (or any other organization, no matter how outstanding) is open to serious question. The authority to expend county funds for any proper county purposes would not seem to extend to the distribution of such a partisan publication. The court cannot conscientiously condone the expenditure of county funds for such purpose. However, this single isolated instance of deviation from the approved doctrine of the utilization of county funds for county purposes only would not justify the entry of an injunctive order generally prohibiting the county manager and the board of county commissioners from expending county funds for any unlawful purposes, as prayed for by plaintiffs. The court is confident that the views herein expressed in respect to the particular publication involved will be sufficient to prevent the recurrence of any similar incident.

Plaintiffs further contend that the recent evening meeting of county employees called by the county manager and held at the county-owned auditorium involved an unlawful expenditure of county funds and unlawful utilization of county facilities, in that such meeting was for the purpose of urging county employees to work and vote against the "McLeod Amendment". This charge is not sustained by the evidence. The testimony shows that such meeting was held for the purpose of affording county employees and the county manager (who commenced his tenure of office on May 1, 1961) to become better acquainted with each other, and for the county manager to make known to county employees his views and administrative policies with respect to the county government. Any discussion of the "McLeod Amendment", if any, was incidental and devoid of any connotation of "political propaganda".

Plaintiffs further charge that the actions of the county manager in speaking at meetings of civic organizations and other groups of citizens constitute political activities, and that the county manager should be prohibited from commenting or expressing any views detrimental to the "McLeod Amendment". The record in this cause wholly fails to sustain such charge. On the contrary, it appears that the county manager primarily discusses the county government, and pursues the practice of expressing his personal views concerning the "McLeod Amendment" only when requested to do so. The court is unable to find anything improper or unlawful in the actions and course of conduct of the county manager. It is apparent that he is performing the duties and functions of the chief executive officer and head of the administrative branch of the county government.

With regard to the publication in the form of an advertisement in the newspapers entitled, "A Message from the County Manager", these advertisements were published prior to the election held August 15, 1961. An injunction is preventive and will not ordinarily lie to restrain an act or alleged injury already committed. 17 Fla. Jur. Injunctions 3, page 374. It is not, therefore, necessary, for the purposes, of this order, to consider the application for injunctive relief in regard to that series of advertisements.

At the hearing, it was conceded on behalf of the defendants that no county funds could be expended for any political activities, and that county funds may be expended only for county purposes. The uncontradicted testimony negates all possibility of the future utilization of any county funds for any improper or unlawful purposes in connection with the special charter

election to be held on October 17, 1961. Therefore, no basis exists for granting the emergency relief prayed for by the plaintiffs.

The premises considered, it is accordingly ordered, adjudged and decreed that plaintiffs' application for injunctive relief at this time, be, and the same is, hereby denied.