WARREN C. LEMIRE v. J. W. GALLOWAY and M. VILLAPOL.

177 So. 283.

En Banc.

Opinion Filed November 18, 1937.

*W. H. Burwell,* for Appellant;

No appearance for Appellees.

ELLIS, C. J.—A bill of complaint was exhibited by Warren C. LeMire, a resident of Dade County, Florida, against J. W. Galloway, Alice G. Galloway, his wife, M. Villapol, all residents of Dade County, the Central Airport Sporting

Club, a New Jersey corporation, which at one time operated a dog racing track at Pennsauken in the State of New Jersey, and Vincent C. Giblin, as Secretary of such Corporation, resident of Miami, and Miami Beach First National Bank, a Florida Corporation. That bill of complaint was filed on March 10, 1936.

The bill contained a prayer for the appointment of a receiver for the Corporation with full authority to take over from the defendants all moneys, books, papers and other properties belonging to the Corporation in the possession or control of the defendants. The bill also asked for the accounting from Galloway and his wife and Villapol to the Corporation for moneys, properties and effects which they were alleged to have in their possession and control belonging to the Corporation and for an injunction to restrain them and their agents from disposing of any part of the same; that the Bank be also required to account to the receiver for all moneys and property held by it for the defendants, Galloway and Villapol.

Vincent C. Giblin was joined as a defendant merely because he was the Secretary of the Central Airport Sporting Club and had in his possession certain books belonging to the Corporation, but he was in nowise charged with any improper conduct of any character in respect to either the management of the Corporation or the transaction of its affairs.

Upon application by the complainant, a receiver was appointed pursuant to the prayer of the bill with power to take possession of all moneys, books, properties, and effects of the Central Airport Sporting Club in the possession or control of the defendants, Galloway and Villapol. An injunctive order was also made restraining the defendants, Galloway and Villapol, from disposing of any of the mon-

eys, property or effects of the Corporation in their possession or control.

In March, 1936, following his appointment, the receiver made demand upon the Galloways and Villapol and Giblin to deliver to him, as receiver, all property and effects belonging to the Corporation, the Central Airport Sporting Club. Vincent C. Giblin, Secretary of the Club, delivered the books and papers in his possession, and Villapol delivered into the receiver's possession certain books and paper set forth and described in the report.

In March, 1936, the attorney for the complainant submitted a motion to the court in which it was in substance recited that while Vincent C. Giblin, as Secretary of the Club, had delivered to the receiver all books and papers in his possession, that Galloway, President of the Club corporation, had refused to comply with the order of the court in any part, that Villapol, Treasurer of the Club corporation, had delivered to the receiver certain cancelled checks, deposit slips and certain other books and papers of the Corporation; that both he and Galloway had declined to turn over to the receiver the moneys, which according to a certain audit of the Corporation's affairs, which had been made and filed, appeared to be in their hands and control and which they had taken from the Corporation. The motion prayed that Galloway, as President, and Villapol, as Treasurer, be required to deliver to the receiver certain described books and documents, notes and cancelled checks in their control and all monies in their possession or control belonging to the Corporation and that failing to comply with such order Galloway and Villapol be required to appear before the Court to show cause why they should not comply with the order or be adjudged in contempt of the court.

Pursuant to that motion an order was made by the court requiring Galloway and Villapol to comply with its terms and in default thereof to show cause before the court why they should not deliver to the receiver the monies, documents, records and writings specified in the order.

The Corporation, Galloway and Villapol appeared. The Corporation appeared by Vincent C. Giblin, attorney, and Galloway and Villapol appeared by their attorneys.

On the 31st of March of the same year Galloway and Villapol filed their response to the rule or order to show cause referred to above in which they made the following averments:

"1. He does not have in his possession any or either of the moneys or records described in paragraphs numbered 1, 2, 4, 5, 6, 7, 8 and 9 of the order hereinbefore referred to.

"2. So far as respondent is advised duplicate deposit slips were never used in banking the funds of Central Airport Sporting Club, and he has none such as are described in paragraph numbered 3 of the aforesaid order.

"3. He does not have in his possession, nor that of any agent, servant or, employee, nor in any depository, any of the funds of Central Airport Sporting Club, as described in paragraph numbered 10 of the aforesaid order.

"4. So far as respondent is advised, all records, books, books of account and moneys of or belonging to Central Airport Sporting Club, save and except those delivered to H. H. Taylor, as Receiver, by the respondent, M. Villapol, on, to-wit: March 17, 1936, are in the possession of an agent of Central Airport Sporting Club, not a party to this proceeding, a resident of, and who has at all times since the commencement of the instant cause, resided in New York City, N. Y., and none such as are described in the

aforesaid order of March 20, 1936, have been elsewhere than in the possession of said agent in New York City since long before the institution of this suit."

Following that response, testimony was taken before the Judge of the Circuit Court for Dade County and at the conclusion of which the complainant filed, by leave of court, his amended bill of complaint, entitled "second Amended Bill of Complaint 'A.'" In that amended bill of complaint Miami Beach First National Bank was omitted as a defendant.

The defendants, Galloway and Villapol, moved to dismiss the Second Amended Bill of Complaint "A" upon the grounds that it affirmatively appeared that the plaintiff, Lemire, was not a stockholder in the Corporation at the time he commenced this suit and that the matters alleged in the bill did not appear from the allegations of the bill to have occurred after the complainant became a stockholder in the Corporation and that the complainant's action, if any exists, is one at common law against Galloway individually and alone; that the bill was multifarious and there was a misjoinder of parties and that the suit was prematurely brought.

In February, 1937, the court denied the defendants' motion to dismiss the bill. Thereupon Galloway and Villapol filed their answers. Decree *pro confesso* was taken by the complainant against Vincent C. Giblin and Central Airport Sporting Club.

In April, 1937, the court entered an order dismissing the defendants, Galloway and Villapol, from the citation for contempt, to which order an appeal was taken by the complainant, LeMire. It appears from a recitation in the order of discharge that the Chancellor was of the opinion that it was not his duty to enforce the order against Villapol and

Galloway respecting the delivery of the documents recited in the order to the receiver by an order of contempt against the defendants.

Both bills of complaint rest upon the theory that a minority stockholder of a defunct corporation, may require of the officers, in this case the president and treasurer of the corporation, an accounting to the corporation, or to a receiver for the corporation, of its assets remaining in their hands after the discharge of all obligations against the corporation. See Tampa Water Works Co. v. Wood, 97 Fla. 493, 121 South. Rep. 789.

The allegations of the bills, of which no denials appear to have been made by the defendants, make a story, most sordid in its character, of breaches of the obligations of friendship, violations of the requirements of good faith, deceit, over-reaching and fraud in which the defendants mismanaged and misappropriated the funds of the Corporation, concealed the moneys and assets of the Corporation, of which they were officers, paid themselves large salaries, which were not required for the closing of the affairs of the corporation, and otherwise cheated and defrauded the complainant who was alleged to be a minority stockholder.

It was alleged that the Corporation conducted a dog race track in the State of New Jersey for a period of about forty-nine days during the year 1934 at Pennsauken, New Jersey, during which period its receipts amounted to over $700,000.00, and that there had not been invested in the business over $76,000.00.

It appears from the allegations of the bill that the Corporation then ceased to transact business and the large sum of moneys, representing its net assets, was appropriated by the two defendants to their own use through the assistance of the wife of Galloway and certain agents of

Villapol, who under their directions, were concealing the same in an effort to place the property beyond the jurisdiction of the courts both of New Jersey and of Florida; that J. W. Galloway was the President and M. Villapol was the designated Treasurer of the Corporation; that certain persons who constituted the Board of Directors were mere agents and puppets of the two principal defendants to create the outward appearance of a regularly conducted corporate business while the two defendants managed the properties, dissipated the assets, squandered the monies, or applied it to the payment of themselves by way of exorbitant salaries and profits, to the injury of the minority stockholder, who was the complainant in the case.

There is another aspect of this case, so far as Galloway is concerned, in which it is made by the allegations of the two bills to appear that the monies which he invested in the Central Airport Sporting Club were derived from the proceeeds of the sale of certain stock in the Biscayne Kennel Club, Inc., owned by the complainant, LeMire, which the latter had intrusted to Galloway to sell for LeMire's benefit and to which Galloway had no right, claim or interest, but by a series of false statements, misrepresentations and deceptions he procured from the fund realized from the sale of such stock enough to invest in the Central Airport Sporting Club and equip it for the business which it operated in 1934.

If those allegations are true, then Galloway was a mere trustee of the investments and profits for the benefit of the complainant, because in the nature of the transactions described in the bill there is an implication or presumption that it was the purpose of the parties acting in good faith that the investment by Galloway of the proceeds of the stock in the Biscayne Kennel Club should be for the bene-

fit of the owner of the proceeds of the sale of that stock. 65 C. J. 222 note. Ladies' Benev. Soc. v. Orrell, 195 N. C. 405, 142 S. E. Rep. 493.

The officers and directors of a corporation occupy toward the corporation and its stockholders ordinarily a *quasi* fiduciary relation and are required to exercise the utmost of good faith in the interests of the Corporation. See Tampa Water Works Co. v. Wood, *supra.*

"The general rule is that where a court has jurisdiction of the person of defendant it may render any appropriate decree acting directly upon the person, although the subject matter may be without the jurisdiction." 21 C. J. 150.

"Where the necessary parties are before a court of equity, it is immaterial that the res of the controversy is beyond the territorial jurisdiction of the court." 15 C. J. 796.

In the case of Schmaltz v. York Manufacturing Co., 204 Pa. 1, 53 Atl. 522, 59 L. R. A. 907, it was said:

"While the situs of the property in dispute is in another state and a decree of a court of this state can not operate upon or directly affect it, yet we think that a court of equity in this state, having jurisdiction of all the parties, can determine their rights to the property, and, by proper process, enforce them *in personam.*" (and cases cited.)

The court appointing a receiver may act directly upon the parties before it respecting property located in another jurisdiction. See 53 C. J. 51, Sec. 39; Brown v. Cuba-American Jockey & Auto Club, 2 F. (2d.) 612.

The Court had jurisdiction to appoint a receiver of the property of the Central Airport Sporting Club, and therefore was authorized to appoint a receiver of its properties although the same were located in another State. See 53 C. J., *supra.*

"While a court of equity cannot send its receiver out of its jurisdiction to enforce its orders or decrees, it may act upon parties within its jurisdiction and amenable to its process, whether or not the property is within the jurisdiction; and such parties will be in contempt if they resist the court's orders, or interfere with the receiver's possession." * * *

"The court may order a party to execute an assignment or conveyance to the receiver of property beyond its territorial jurisdiction, and disobedience of the order will be a contempt." See 53 C. J. p. 118, 119, Sects. 143, 144.

The order of the Chancellor, therefore, dated the 16th of April, 1937, from which the appeal was taken in this case, is reversed.

Reversed.

WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.