CHARLES W. ARNOLD, *et al.,* v. STATE OF FLORIDA *ex rel.* NATHAN L. MALLISON

2 So. (2nd) 874
En Banc
Opinion Filed May 30, 1941
Rehearing Denied July 2, 1941

*Waybright & Waybright,* for Plaintiff in Error;

*L. R. Milton* and *Austin Miller,* for Defendant in Error.

CHAPMAN, J.—This case is before the Court on writ of error to a final judgment awarding a peremptory writ of mandamus issued by the Circuit Court of Duval County, Florida. The peremptory writ commanded the playground and recreational board of the City of Jacksonville to convene and rescind that certain resolution adopted by it under date of May 29, 1940, and to reinstate relator as superintendent of recreation and permit the relator to perform all the duties of superintendent of recreation and that they cause to be paid the salary of the relator beginning June 16, 1940 and ending July 31, 1940, at the sum or sums per month stated in the peremptory writ.

Chapter 9788, Special Acts of 1923, Laws of Florida, created the playground and recreational board of the City of Jacksonville. The board had the power to acquire, establish, maintain and construct playgrounds and recreation centers and to employ playground

leaders, playground directors, a recreation superintendent, and such other officers or employees as the board deemed proper. The board was granted the exclusive control over and disbursement of all moneys appropriated and collected and placed to the credit of the playground and recreation fund.

Prior to September 19, 1929, the Board employed the relator as superintendent of recreation and he continued to perform and discharge said duties until June 15, 1940. Among the duties of the superintendent of recreation are viz.: to obtain recreation workers; to increase their capabilities; promote special events; coordinate the efforts of specialized workers; plan socials for neighborhood groups and to direct activities as planned; supervise swimming meets, track meets and civil celebrations; assist Federal employees; plan city-wide observances; assist civic groups; serve as adult adviser to model aeroplane club; answer correspondence; coöperate with school authorities in physical education program; lead community singing; arrange for band concerts; develop citizenship in the young by every appropriate means through supervised leisure time activities. The salary of the superintendent of recreation was fixed by the playground and recreation board at the sum of $325.00 per month.

The resolution dated May 29, 1940, adopted by the playground and recreation board, which the peremptory writ commanded the board to rescind, was to the effect that the position of superintendent of recreation does not justify the expenditure therefor and that the money used in the payment of the salary of the superintendent of recreation could be used to better advantage in the development of playgrounds and that said position of superintendent of recreation as pro-

vided for by Section 1 of Chapter 9788, Special Acts of 1923, was unnecessary and unwarranted and that the position of superintendent of recreation be abolished as of June 15, 1940.

Chapter 16866, Acts of 1935, Laws of Florida, created or established a civil service for the employees of the City of Jacksonville. Section 1 of the Act created a civil service board, prescribed the qualification for membership and duration of commission. The board was to be appointed by the city commission and confirmed by a majority of all the members of the city council. Section 3 of said Act divided the employees of said city into the classified and unclassified service. Section 4 of the Act granted the civil service board to: (a) adopt and amend rules and regulations for the administration of the Act; (b) make investigations concerning the enforcement and effect of the Act and to hear and determine appeals and complaints respecting the administration of the Act; (c) maintain a roster of the officers and employees showing their occupation, compensation and residence; (d) ascertain and record the duties and responsibilities appertaining to all positions and to classify the same; (e) hold competitive tests to determine qualifications of persons seeking employment in the various classes of positions; (f) certify to the appointing authority the names of person or persons highest on the employment or re-employment list for the class; (g) establish records of performance and a system service rating to be used in determining promotions and other purposes.

Section 5 of the Act provided that any person holding a position in the classified service on the 15th day of April, 1935, and having been in the service for a year prior thereto should be retained in the service

without performance tests and should be subject to all the provisions of the Act and be regarded as holding their positions under provisional appointment.

The position of superintendent of recreation created by Chapter 9788, *supra,* and to which the relator was appointed and which he held continuously until June, 1940, was employment controlled by the provisions of Chapter 16866, Acts of 1935. Section 7 of the latter Act provides:

"Section 7. With the approval of the Civil Service Board, additional classes may be established for new positions created, or positions not included in any previously established class may be allocated thereto, as the administration may require. Any existing class or classes may be divided, combined, altered or abolished and positions allocated to any class or classes may be reallocated. The appointing authorities shall promptly report to the board intention to establish new positions that may be classified and allocated, and that certifications may be made or appropriate tests provided for and held for the purpose of establishing requisite employment lists from which appointments may be made as provided in this Act."

Section 21 of Chapter 16866 grants the power to the appointing authority to suspend or dismiss any subordinate for a cause which would promote the efficiency of the service, but the appointing authority is required to file with the civil service board written reasons for the removal, and charges preferred and a notice of hearing shall be allowed or granted the affected employee. The dismissal order entered by the appointing authority shall be final and not reviewable in any court, but the civil service board shall have the power to reinstate the person removed if it appears, after a

hearing, that the removal as made by the appointing authority was for *reasons other than a just cause*. It further provides that no person in a classified service shall be removed or discharged, except for cause upon written charges, and after an opportunity to be heard in his own defense. The charges can or may be filed against the employee by the appointing authority, citizen or taxpayer, and then, it becomes the duty of the civil service board, within thirty days after the answer to the charge is filed, to hear, investigate and determine the merits of the cause or causes for removal or discharge. The Act further provides that the findings and decisions of the civil service board shall be final and not reviewable by any court and a certified copy of the findings shall be presented to the appointing authority, and it shall be the duty of the appointing authority to conform to or enforce the findings and decisions of the civil service board with reference to the removal or discharge of said employee.

Pursuant to the provisions of Section 1 of Chapter 16866, Acts of 1935, the civil service board of the City of Jacksonville investigated the facts and circumstances under which the resolution dated May 29, 1940, as adopted by the playground and recreation board which abolished the position of superintendent of recreation, and at the conclusion of the investigation of the civil service board adopted the following resolution:

"Whereas it appears to the board from the testimony of several witnesses and from the statement made by the Chairman of the Playground and Recreation Board that the playground and recreation board was not familiar with the duties performed by the said Nathan L. Mallison, and was therefore not in a

position to determine whether or not economy and the general welfare of the city could be promoted by abolishing the position of superintendent, and

"Whereas, it appears also to the members of the civil service board that the playground and recreation board members had knowledge of Mr. Byrnes' intention of retiring and leaving the services of the city and in view of this forthcoming vacancy Mr. Mallison would be deprived of an opportunity to participate in a promotional test to fill the vacancy created by the retirement of Mr. Byrnes and that in view of the playground and recreation board's knowledge of Mr. Byrnes' intention of leaving the city's employ, 'economy' could not have been the reason for the abolition of the position of superintendent, now

"Therefore the civil service board finds that the job of Superintendent of Recreation was not abolished in good faith and orders the immediate reinstatement of the employee."

It cannot be denied that the provisions of Chapter 9788 *supra* granted to the playground and recreation board not only discretionary but broad powers and as a result thereof absolute and undisputed control was given it to acquire, establish, maintain and conduct playgrounds and recreation centers within the City of Jacksonville, and as incidental to carrying out the several provisions and mandates of the statute, authority was granted to employ: (1) play-leaders; (2) playground directors; (3) a recreation superintendent; and (4) such other officers or employees as they (the playground and recreation board) might deem proper. The entire program of recreation work of said city under the provisions of the Act was lodged or placed with this particular board.

The relator was employed as superintendent of recreation and had been for several years prior to the time Chapter 16866 *supra* was enacted which affected all the employees of said city.

After a careful consideration of Chapters 9788 and 16866 *supra,* we are unable to find conflicts or repugnance in the respective Acts. The Legislature intended that full meaning and intent be given to the respective Acts. It is a rule of statutory construction that if courts can by any fair, strict or liberal construction find a field of operation and can act without destroying the evident intent and meaning and preserving the force of both and can by construing them together carry out the manifest intention of the Legislature, it is their duty so to do. See Dade County v. Miami, 77 Fla. 786, 82 So. 354; State v. Simpson, 94 Fla. 789, 114 So. 542. Likewise, if two statutes may operate upon the same subject without positive inconsistency or repugnance in their practical effect and consequence, they should each be construed as to carry out the legislative intent. See State v. Gadsden County, 63 Fla. 620, 58 So. 232; Stewart v. DeLand-Lake Helen Special Road District, 71 Fla. 158, 71 So. 42.

Chapter 16866 *supra* was an expression of the Legislature subsequent to the enactment of Chapter 9788 *supra* and the Legislature intended that Section 21 of Chapter 16866 should control with reference to suspensions and dismissals of employees by the playground and recreation board and when a person in the classified service is removed or discharged, it then becomes the duty of the civil service board, under the provisions of Section 21 of said Chapter, to hear, investigate and determine the cause or causes for such removal or dis-

charge, and if such cause or causes are for reasons other than just, it shall be the duty of the civil service board to so find and order and a copy of said order or decision then be certified to the appointing authority and such appointing authority shall have no alternative other than the enforcement of said order or decision as made by the civil service board. The order or decision so made by the civil service board is administrative or ministerial and not judicial and cannot be reviewed by the courts. See Owen v. Bond, 83 Fla. 495, 91 So. 686; Sirmans v. Owen, 87 Fla. 485, 100 So. 734.

This Court, in the case of State *ex rel.* Norris v. Chancey, 129 Fla. 194, 176 So. 78, construed a civil service statute in many respects similar to Chapter 16866 and we think is controlling here. The Court quoted from 43 C. J. at page 679 as follows:

" 'The statutes requiring a hearing or opportunity to explain apply only where the removal is for incompetency, misconduct, or other reason personal to the individual removed, and not where the removal is made in good faith from motives of economy, as where the services are no longer needed, or there is not a sufficient appropriation to pay salaries, or the office or position is in good faith abolished, but to make a compliance with the statutes unnecessary, the office must be abolished in good faith. The full performance of all conditions established by the civil service laws is an essential prerequisite to the jurisdiction of the removing body over the subject matter of the removal of an officer, and where there is no substantial compliance with the statutory procedure, an order of removal is a nullity.' "

It appears to be settled law that a removal of an

employee under the terms of Chapter 16866 *supra* must be made in good faith, or for reasons of economy, or where an office or position is abolished the same must be done in good faith, or on some general delinquency, such as misconduct, incompetency, inefficiency or insubordination or some other act affecting the general character and fitness of the employee, and then only upon written charges preferred according to the Act and after a hearing by the civil service board. See McQuillin on Municipal Corporations, Revised Vol. 2 (2nd Ed.) pages 445 *et seq.*, par. 581 (557); 10 Am. Jur. pages 933-4, par. 12; State *ex rel.* Voris v. City of Seattle, 74 Wash. 199, 133 Pac. 11; 4 A. L. R. 198, and annotations at pages 205, *et seq.*

If the resolution dated May 29, 1940, adopted by the playground and recreation board abolishing the position of superintendent of recreation for the City of Jacksonville as held by the relator is sustained, it was necessary for the respondents below to show that the resolution abolishing the position was adopted in good faith. The resolution recited that the position was unnecessary and unwaranted and the money used in the payment of the salary could be better used in the development of the playground.

In mandamus proceedings the alternative writ takes the place of a declaration at law and essential facts should be alleged showing the duty and legal obligation of the respondent to perform the act demanded of him, as well as all the facts that will entitle the relator to invoke the aid of the court. See Mixson v. First Nat. Bank, 102 Fla. 468, 136 So. 258; State *ex rel.* Globe & Rutgers Fire Ins. Co. v. Cornelius, 100 Fla. 292, 129 So. 752; City of Bradenton v. State, 122 Fla. 516, 165 So. 687.

The amended alternative writ, among other things alleged that the civil service board ascertained and recorded the duties of the relator, which are fully described. A short time prior to March, 1938, the playground and recreation board authorized the employment of an assistant superintendent of recreation at a salary of $3,000.00 per year. On July 11, 1938, the board concluded not to fill the position of assistant superintendent of recreation because there was an apparent lack of interest and the few applicants applying for examination and the recreation board concluded that the duties of superintendent of recreation were too burdensome and requested the civil service board to establish a new classification for a special play-leader with additional duties of assisting the superintendent of recreation. On August 1, 1938, the recreation board appointed Richard J. Blume as special-play-leader at a salary of $115.00 per month, which was increased, and the position abolished on June 15, 1940. The position of director of recreation was held by Joseph E. Byrnes, who was in bad health, and on the 28th day of May, 1940, by letter asked for permission to retire, and on the following day the recreation board adopted a resolution attempting to abolish the position of superintendent of recreation. The civil service board had adopted rules for a promotional test examination and under the rules the relator would have had a right to take the promotional test examination for the position of director of recreation. The effect of abolishing the position of superintendent of recreation denied the relator the privilege of taking the promotional test for the position of director of recreation.

The answer to the amended alternative writ ad-

mitted many of the material allegations thereof. It is contended further that the resolution adopted May 29, 1940, abolishing the position of superintendent of recreation was not made in bad faith and on final hearing contended that this issue of fact, with others, should have been determined by evidence of the respective parties taken before the lower court. All facts alleged in an alternative writ of mandamus not specifically denied are admitted to be true. See State *ex rel.* Rempsen v. Smith, 105 Fla. 368, 141 So. 318.

We think the facts set up in the amended alternative writ make a *prima facie* case, coupled with the recitals appearing in the resolution dated May 29, 1940, and the conflicting and contradictory course of action pursued for some two or three years prior to the adoption thereof, are sufficient to show that the playground and recreation board did not act in good faith in the adoption of the resolution. The fact that an issue was made by the respondents in their answer to the effect that the resolution was adopted in good faith is an insufficient cause or reason to prevent the issuance of a peremptory writ of mandamus.

We fail to find error in the record and accordingly the judgment appealed from is hereby affirmed.

BROWN, C. J., WHITFIELD and BUFORD, J. J., concur.

TERRELL, THOMAS and ADAMS, J. J., dissent.