187 So.2d 923 (1966)
TOWER CREDIT CORPORATION, Consumer Credit Corporation, Indian River Loan Company, Financial Corporation of Florida, Central Factors, Inc., R.C. Fernon, Dorothy Fernon and Fred Koepp, Appellants,
v.
STATE of Florida, by Fred O. DICKINSON, Jr., Comptroller, Earl Faircloth, Attorney General, and Broward Williams, State Treasurer, As and Constituting the Florida Securities Commission, et al., Appellees.
No. 486.
District Court of Appeal of Florida. Fourth District.
June 16, 1966.
Rehearing Denied July 18, 1966.
Miller Walton and Thomas N. Holloway, of Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for appellants.
*924 Earl Faircloth, Atty. Gen., Tallahassee, Frank A. Orlando, Asst. Atty. Gen., Miami, and Milton J. Wallace, Asst. Atty. Gen. and Gen. Counsel for Florida Securities Commission, Miami, for appellees.
SMITH, Chief Judge.
In this same case on a prior interlocutory appeal this court affirmed a temporary restraining order entered by the trial court, Tower Credit Corporation v. State, Fla. App. 1966, 183 So.2d 255. Subsequent to the entry of that order the defendants filed a motion to vacate the order appointing a receiver and to dissolve the temporary restraining order insofar as it applied to the appellants here. The court heard the testimony of the parties and denied the defendants' motion, and these defendants now appeal from that order.
The defendants, Tower Credit Corporation, Consumer Credit Corporation and Financial Corporation of Florida, contend that the court did not have jurisdiction to appoint a receiver for these corporations because each of their places of business was in Hillsborough County and neither had any office, place of business or property in Martin County. Resolution of the point requires a chronological statement of the evolution of some of the facets of the territorial jurisdiction of the circuit court.
Prior to the Constitution of 1885 the common law prevailing was that no court could send and have its processes executed beyond its territorial boundaries without express constitutional or legislative authority and neither existed.[1] A circuit court having jurisdiction of the parties could, however, establish the rights in and define and declare the liens upon property in another circuit although it could not decree a sale by its officers of that property.[2] Section 6(3) of Article V of the Constitution of 1885, F.S.A. provided: "* * * The circuit courts and circuit judges shall have such extra-territorial jurisdiction in chancery cases as may be prescribed by law." Pursuant to that constitutional authority in 1887[3] territorial jurisdiction was expanded by providing that, when any suit was brought in a county in which the defendant did not reside or could not be found, process could be served in the county where the defendant resided or could be found. The act contained the proviso, however, that it did not authorize suits to be brought in any county other than that in which the defendant resided or the cause of action accrued or the property in litigation was located. In 1895 the Supreme Court construed that statute to mean that, if suit was not brought in one of the designated counties, then, there was no statutory authority for service of process in another county.[4] In the same year and immediately thereafter our present law was enacted[5] which provides that in all civil cases process when issued out of any circuit court shall run throughout the state and be directed to all and singular the sheriffs of the state. This statute gave each circuit court jurisdiction over all residents of the state regardless of the county in which they lived and when reached by process they became subject to the orders of the court.[6] Thus, beginning with the Act of 1895 and continuing to the present where a circuit court has jurisdiction of a cause of action it may acquire jurisdiction of the defendants by service of process wherever the defendants may be found within the state, regardless of the county in which they live, and, except as to purely local actions involving property situated beyond its territorial limits, it *925 may, as an auxiliary, incidental or conservatory measure, cause its process to be exercised in any part of the state, and the exercise of such power does not confer extra-territorial jurisdiction upon the circuit courts in violation of any expressed or implied prohibition in the constitution.[7] The law announced in the decision of 1875[8] was changed in order that a circuit court which had jurisdiction of the cause of action and which acquired jurisdiction of the defendants could appoint a receiver of property located beyond the territorial limits of the court.[9]
In 1901 Chapter 4986 was enacted which now appears as F.S.A. § 62.03 and provides:
"62.03. Venue of receiverships when property in more than one circuit.  Whenever an application shall be made for the appointment of a receiver to take charge of either real or personal property, or both, and the property is situated in more than one of the judicial circuits of the State of Florida, the court in appointing said receiver shall have jurisdiction over the entire property for the purposes of that suit. Provided, that the application for appointment of the receiver must be made to the judge of a judicial circuit in which the principal or main place of business, residence or office of the defendant is situated; and the court to which such application is made shall have exclusive jurisdiction thereof, and any action on the application by the said court, either affirmative or negative, shall be final, subject, however, to a right of appeal."
From the foregoing it may be seen that this statute was not a grant of jurisdiction to a circuit court to appoint a receiver to take charge of property situated beyond the territorial limits of that court because the court already had that jurisdiction. In fact, a circuit court with jurisdiction of a foreign corporation by process served on its officers may appoint a receiver over the corporation's property although the property is situated in another state, but it cannot send its receiver beyond its jurisdiction to enforce its decree; however, it may act directly on the parties before it concerning property located in another jurisdiction.[10] When enacted the title of the act was "An Act Enlarging the Chancery Jurisdiction in the Appointment of Receivers". The title may be used as an aid in its interpretation. The section heading, "Venue of receiverships when property in more than one circuit", was not a part of the act. It was added by the revisers in the process of statutory revision and is therefore not a proper matter for consideration in the interpretation of the statute.[11] There also already existed the multiple venue statute[12] making venue in a suit against two or more defendants residing in different counties in the county in which any defendant resides.
With all the foregoing in mind we emphasize the fact that F.S.A. § 62.03 provides "[t]hat the application for appointment of the receiver must be made to the Judge of a judicial circuit in which the principal or main place of business, residence or office of the defendant is situated * * *." (Emphasis added.) The statute has no application to the case at bar because no place exists which is the main place of business of the defendant as there are here multiple defendants with their main place of business in more than one county. *926 This statute merely made what was formerly concurrent jurisdiction of each of the circuit courts the exclusive jurisdiction of the circuit court of the county in which the main place of business of the (meaning one as distinguished from multiple) defendant is situate. No such exclusive jurisdiction existed here because of the several main places of business of the several defendants.
It should also be remembered that the appointment of a receiver is a remedy ancillary to the cause of action here in suit. The real cause of action here involves initially the alleged unlawful sale of securities by First Mortgage Corporation of Stuart, allegedly accomplished in a conspiracy devised by Fernon and carried out through his control of all of the corporations to the end result that the holders of investment certificates registered with the commission by First Mortgage are not in a secured position as they should be in accordance with the representations made in registration with the commission which are a part of the representations made to the public in offering for sale the investment certificates. All of the parties except Tower Credit, Consumer Credit and Financial have their principal place of business or residence in Martin County. The latter three defendants concede that they can be sued in this action in Martin County, and we must reject their contention that in the suit the court did not have jurisdiction to appoint a receiver to take charge of all of the property of all of the defendants. To accept such a contention would produce the absurd result of having the suit in one county and yet requiring the ancillary receivership proceeding as to some of the defendants to be in another county. The law favors a rational and sensible construction of statutes, the harmonizing of the statutes, their interpretation in a manner which avoids mischievous or absurd consequences, and, if two statutes may operate upon the same subject without positive inconsistency or repugnance in their practical effect and consequence, each should be given the effect designed for them.
If these three corporate defendants were the only defendants, then we would construe the mentioned statutes to place exclusive jurisdiction in the Circuit Court of Hillsborough County to appoint a receiver to take charge of property in another judicial circuit. Such was the result of the decision in Southern Brewing Co. v. May, 1936, 122 Fla. 443, 165 So. 627. In that case there was only one defendant, a corporation, with its principal place of business in a county not in the judicial circuit where sued.
The defendants all contend that the Florida Securities Commission's right to maintain the suit for injunction cannot be sustained and the temporary injunction and the order appointing a receiver must be reversed because the allegations of fraudulent practices in connection with the sale of securities relate only to another defendant, First Mortgage Corporation of Stuart, as it is the sale of the securities of that corporation which forms the real basis for the complaint.
The complaint alleges that First Mortgage registered by notification with the commission at various times investment securities in the amount of $1,900,000.00. As a part of such registration First Mortgage submitted to the commission certain rules and regulations governing such certificates. First Mortgage sold and offered for sale to the public the investment certificates representing that it had complied with the rules and regulations filed with and approved by the commission. First Mortgage had wholly failed to comply with the requirements of an escrow account, had issued and outstanding $1,624,017.73 of investment certificates, and its escrow account showed a shortage of $1,169,710.98 because that sum had been removed from the escrow account by diversion of funds for purposes other than investment in first mortgages. The complaint further alleged that the defendant, Fernon, had admitted to representatives *927 of the commission that he caused First Mortgage to lend funds to the other corporate defendants and that some of the other corporate defendants were purchasing control of other corporate defendants and lending money to each other. All of these complicated interwoven transactions had the effect of relegating the holders of the investment certificates to the status of unsecured creditors. The complaint then alleged that the remaining corporate defendants did knowingly and wilfully participate in the conspiracy devised by their controlling stockholders whereby funds received from the investors of First Mortgage were diverted to the benefit of the other defendants. The evidence generally substantiates the allegations. There is some variance in the proofs as to whether or not the transactions between the corporations were loans or the purchase by one of the securities or stock of the other. This we deem to be immaterial, and we must reject the appellants' contentions that the allegations and proofs show merely (1) that First Mortgage may have violated the Florida Securities Law in connection with the offers and sales of its first mortgage certificates; (2) that First Mortgage may have certain rights, claims or causes of action against the other defendants, but these facts do not entitle the commission to maintain a suit against the defendants other than First Mortgage; and (3) that, as to these parties, the complaint is nothing more than a creditor's bill by the commission on behalf of First Mortgage's certificate holders, which is not permitted by the Florida Securities Law.
We equate the contention of Tower Credit, Consumer Credit and Financial to, in effect, say that even if First Mortgage has unlawfully and fraudulently obtained funds from the general public, we are insulated from suit because we obtained the funds from First Mortgage and not from its investors. This contention overlooks the principal import of the commission's complaint which is that all of these transactions were a part of a conspiracy by all defendants for obtaining money by false representations which are fraudulent and in violation of the Florida Securities Law. F.S.A. § 517.19 specifically empowers the commission to bring an action in the name of the state against any person who shall have engaged in any practice, transaction or course of business relating to the sale of securities, which is fraudulent, has operated or did operate as a fraud on the purchaser, or is in violation of the law and against any other person concerned in or in any way participating in or about to participate in such fraudulent practices or violations of law. This section permits the commission to seek an injunction or the appointment of a receiver for the property, assets and business of the defendants.
The appointment of a receiver and the issuance of an injunction pendente lite are matters within the discretion of the trial court. There was sufficient predicate in the complaint and sufficient proofs at the hearing to sustain the order of the court declining to vacate its order appointing a receiver and declining to dissolve the temporary restraining order.
The views which we express here are confined strictly to the record to the point of the entry of the order appealed. They should not be construed as prejudging the ultimate merits of the cause which will be determined by the trial court after full hearing.
Affirmed.
WALDEN, J., and ALLEN, WILLIAM P., Associate Judge, concur.
NOTES
[1] State of Florida v. Jacksonville P. & M.R.R. Co., 1875, 15 Fla. 201.
[2] State of Florida v. Jacksonville P. & M.R.R. Co., 1878, 16 Fla. 708.
[3] Chapter 3721, Laws of Florida, Acts of 1887, § 1 which is now F.S.A. §§ 46.01 and 47.12.
[4] Sanchez v. Haynes, 1895, 35 Fla. 619, 18 So. 27.
[5] Chapter 4397, Laws of Florida, Acts of 1895, § 1, now F.S.A. § 47.08.
[6] Patten v. Mokher, 1938, 134 Fla. 433, 184 So. 29.
[7] Chapman v. Reddick, 1899, 41 Fla. 120, 25 So. 673.
[8] See footnote 1, supra.
[9] Beard v. Viser, 1923, 86 Fla. 265, 97 So. 718.
[10] Lemire v. Galloway, 1937, 130 Fla. 101, 177 So. 283.
[11] Berger v. Jackson, 1945, 156 Fla. 251, 23 So.2d 265.
[12] First enacted by Section 10 of the Territorial Act of November 23, 1828, which is now F.S.A. § 46.02.