Bettye K. McINTOSH, Plaintiff,

v.

The CITY OF LIVE OAK, FLORIDA, John H. Hale, Charles R. McCall, William J. McCullers, Keith E. Mixon, Garth R. Nobles, Jr., Each individually and in their official capacity as members of the City Council of Live Oak; Ernest A. Sellers, Individually and in his capacity as City Attorney; William J. Casey and George Horning, Each individually and in their official capacity as City Auditors; and Alan C. Sundberg, Individually, Defendants.

No. 84–153–Civ–J–14.

United States District Court, M.D. Florida, Jacksonville Division.

April 2, 1985.

Winston W. Jacobo, Fruitland Park, Fla., for plaintiff.

Edwin B. Browning, Jr., Davis, Browning & Hardee, Madison, Fla., for all defendants except Sundberg.

C. Harris Dittmar, Timothy J. Corrigan, Bedell, Dittmar, DeVault, Pillans & Gentry, Jacksonville, Fla., for defendant Sundberg.

## OPINION

SUSAN H. BLACK, District Judge.

This case is before the Court on defendants The City of Live Oak, Florida, John H. Hale, Charles R. McCall, William J. McCullers, Keith E. Mixon, and Garth R. Nobles, Jr.'s Motions to Dismiss and to Strike, filed herein on March 26, 1984; defendant Ernest A. Sellers' Motions to Dismiss and to Strike, filed herein on March 30, 1984; defendants William J. Casey and George Horning's Motions to Dismiss and to Strike, filed herein on March 30, 1984; and defendant Alan C. Sundberg's Motion to Dismiss, filed herein on April 17, 1984. The plaintiff filed her response to the defendants' motions on May 1, 1984. On July 25, 1984, the Court directed the parties to brief the issue of whether the plaintiff's section 1983 claims should be dismissed

because the State of Florida provides a reasonable remedy for the plaintiff's alleged grievances. The parties having responded, the Court will consider the question.

The plaintiff's claims are based on her removal as the elected City Clerk for the City of Live Oak. On May 10, 1983, the City Council for the City of Live Oak [hereinafter "Council"] passed an ordinance creating the position of Finance Director-Deputy City Treasurer. The plaintiff alleges that this new office in effect ousted her from her position as City Clerk by absorbing many of her duties. *See* Complaint at paragraph 11. When the plaintiff confronted the Council with the apparent conflict between the duties of the two positions, she allegedly was threatened with a lawsuit for misconduct in office. To resolve the conflict between her office and the office of Finance Director-Deputy Treasurer, the plaintiff filed a declaratory action in the Third Judicial Circuit, in and for Suwanee County, Case No. 83–315–CA, seeking a determination of the validity of the office created by the Council. *See* Complaint at paragraph 16. On October 25, 1983, the mayor suspended the plaintiff from office. After a hearing on the matter the following day, the Council voted to approve the suspension.

The plaintiff's claims in Counts I, II, and III are based on the allegation that these defendants, individually and in concert, deprived the plaintiff of her vested property interest in the office of City Clerk without due process of law in violation of 42 U.S.C. § 1983. (The plaintiff also raises state law claims in Counts IV, V, and VI. However, in determining whether this case is properly before the Court, only section 1983 claims are relevant). Although the complaint is unclear as to the state action which allegedly deprived the plaintiff of her property interest, the basis of this action appears to be the hearing held by the Council following her suspension by the mayor. The Council's suspension hearing involved each of the defendants charged in this action. Defendant Sellers was the City Attorney at the time of the plaintiff's

removal and defendant Sunberg was a private attorney hired to advise the Council. Defendants Casey and Horning were city auditors who provided evidence at the hearing regarding the plaintiff's financial dealings while she was City Clerk. Defendants Hale, McCall, McCullers, Mixon, and Nobles were councilmen who heard and voted on the matter of plaintiff's suspension; and the City of Live Oak was involved as the governing entity under whose authority the hearing was held and the plaintiff suspended.

Before addressing whether the plaintiff's section 1983 claims are properly before this Court, the Court recognizes that the interests of the State of Florida are intrinsically involved in this case and that federal abstention would be appropriate. Although cloaked in due process terms, the plaintiff's alleged federal constitutional claims reach beyond the confines of the Council's hearing to raise the state constitutional issue of whether the Council validly acted when it created the Office of Finance Director-Deputy Treasurer. The plaintiff acknowledged that the validity of Ordinance 676 is a key issue when she filed her action for declaratory relief in state court. Further evidence of the true nature of this case is the plaintiff's prayer for relief which asks that the Court issue both an injunction reinstating the plaintiff as City Clerk and a "declaratory judgment that Ordinance 676 is in direct violation of the City Charter...." *See* Complaint at paragraphs b & c. The preeminence of state issues, including state constitutional issues, would warrant the Court abstaining from consideration of plaintiff's federal claims until the state issues, which necessarily impact on those claims, had been resolved in state court. *See Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The fact that the plaintiff presently has pending a state action which could resolve these state issues makes abstention an even more viable alternative. *See Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). However, for reasons dis-

cussed below, the Court will not invoke federal abstention.

■ The issue now before the Court is whether the plaintiff's section 1983 due process claims are foreclosed under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *Parratt* holds that the deprivation of one's property interest is not a violation of the fourteenth amendment due process clause so long as the state provides the deprived person a forum for redress of his grievance. The basis for the holding is that a state cannot be held accountable for a denial of due process until its actions relevant to the deprivation is complete and it either has provided or has refused to provide a suitable postdeprivation remedy. *Id.* at 541–542, 101 S.Ct. at 1916; *see also Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir.1975), *modified en banc* 545 F.2d 565 (1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). *Parratt* is only applicable when the deprivation complained of is the result of a negligent or intentional act by a state or local government employee. *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Further, the act causing the deprivation must have been random and unauthorized; if the act was the result of "some established state procedure," *Parratt* does not apply. *Logan v. Zimmerman Brush Company*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Before determining whether the State of Florida provides a suitable postdeprivation remedy for the plaintiff, the Court will examine whether the acts complained of were the result of "some established state procedure."

In *Logan v. Zimmerman Brush Company*, the United States Supreme Court held that *Parratt* was not applicable where the act causing the deprivation of property was found to be the result of an established state procedure. The complainant had filed a timely claim with the state Fair Employment Practices Commission alleging that he had been discriminated against on the basis of a physical handicap. Pursuant to state law, the Commission had 120 days from the date the claim was filed in which to convene in order to determine the appropriate action, if any, to take against the employer. The complainant's opportunity to obtain relief was foreclosed, however, when the Commission failed to meet within the statutory time period. The complainant then filed for relief in federal court claiming that he had been deprived of his property interest without due process.

Reviewing the case in light of *Parratt*, the Supreme Court first addressed the question of whether the loss of property was the result of a random and unauthorized act or the result of an established state procedure. The Supreme Court found that the state system itself destroyed the complainant's property interest. The complainant had been deprived of his property interest by operation of the law requiring that the Commission convene within 120 days, and it was this law that the complainant attacked on due process grounds. Since the due process challenge went directly to the state's statutorily established procedure, the Supreme Court concluded that *Parratt* was not applicable.

Turning to the case *sub judice*, some of the plaintiff's allegations describe acts which clearly were random and unauthorized. An example is the plaintiff's claim that certain of the defendants threatened her with a lawsuit for malfeasance in office when she questioned the validity of Ordinance 676. However, whether the acts occurring within the framework of the suspension hearing were random and unauthorized or the result of an established state procedure is less clear. If they are the latter, *Parratt* is not applicable.

The plaintiff's claims as regards the hearing do not attack the procedure established by the City Charter. The plaintiff recognizes that Section 10 of the Live Oak City Charter empowers the mayor to suspend any city officer. Plaintiff's Memorandum of Law, dated August 15, 1984, at 3. The mayor is to report any suspension in writing to the Council which in turn votes to either approve or disapprove the mayor's action. *Id.* Unlike the plaintiff in *Logan*,

the plaintiff herein does not allege the Charter's procedure is constitutionally defective. Instead, she claims that these defendants committed errors at the hearing, either intentionally or negligently, which deviated from the established procedure and thereby tainted the decision to suspend the plaintiff.

The plaintiff alleges that the Council members erred by refusing to disqualify themselves from hearing plaintiff's case when there was a collateral action between the parties pending in state court. The Council members also allegedly erred by hearing the matter despite the fact that prior to the hearing some members had stated publicly that the plaintiff should be suspended. Complaint at paragraph 18. The plaintiff further claims the Council and the attorneys advising them failed to allow her to cross-examine witnesses and unlawfully used hearsay against her. Complaint at paragraphs 18, 20, and 21.

■ The Court finds that the plaintiff has alleged sufficient facts demonstrating that the acts which effectuated the property deprivation alleged herein were random and unauthorized. Some of these acts, such as threatening the plaintiff with a lawsuit, occurred outside any established state procedure. Other acts occurred within the framework of the Council's suspension hearing. However, while the hearing is an established state procedure, the plaintiff challenges, not that the Council conducted a hearing, but that the Council conducted a defective hearing. The Court finds that the alleged errors charged against these defendants sufficiently deviate from the Charter's established procedure to qualify as random and unauthorized acts. Therefore, the Court finds that the acts complained of were not the result of an established state procedure and that this requirement of *Parratt* is met. *See Cohen v. City of Philadelphia,* 736 F.2d 81, 84 (3rd Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). *Parratt* holds, however, that the plaintiff's section 1983 claims can only be dismissed where the state provides her with an adequate means by which to receive redress for the deprivation. The Court further finds that this last requirement is also met.

■ When a Florida governmental official claims that he has been improperly removed from office, the proper vehicle for relief is an action for mandamus in state court. *See West v. Board of County Commissioners,* 373 So.2d 83, 86 (Fla. 3d DCA 1979) and cases cited therein. Where the Playground and Recreation Board for the City of Jacksonville passed a resolution abolishing the position of Superintendent of Recreation, a peremptory writ of mandamus was issued by the state court commanding the board to rescind the resolution and reinstate the plaintiff. *Arnold v. State ex rel. Mallison,* 147 Fla. 324, 2 So.2d 874 (1941). The writ was issued based on the state court's finding that the resolution was adopted in bad faith. *Id.* at 879; *see also State ex rel. Gibbs v. Williams,* 136 Fla. 110, 186 So. 816 (1938); *State ex rel. Gibbs v. Bloodworth,* 134 Fla. 369, 184 So. 1 (1938). A state court will issue a writ where it appears the proceedings removing the municipal officer "were illegal or fatally defective, or if the testimony wholly fails to support the charges made." *Etzler v. Brown,* 58 Fla. 221, 50 So. 416, 417 (1909).

The plaintiff herein claims that she has been wrongly removed from office. The relief she seeks is reinstatement, a declaration invalidating the resolution of the Council, compensation for lost pay and benefits, as well as damages pursuant to Florida law. The Court finds that a writ of mandamus issued by a state court would adequately provide the relief that the plaintiff seeks.

The plaintiff having an adequate remedy under state law, the Court, by separate order entered on this date, will dismiss Counts I, II, and III, which seek relief pursuant to section 1983. As to those remaining state law claims raised in Counts IV, V, and VI, the Court finds that the interests involved are not sufficient to warrant the exercise of its pendent jurisdiction and, therefore, will dismiss these claims by

separate order. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).