Mr. G.R. McClelland City Attorney City of Largo Post Office Box 296 Largo, Florida 34294-0296
Dear Mr. McClelland:
This is in response to your request for an opinion on substantially the following questions:
 1. WHETHER s. 163.3187, F.S., LIMITING THE NUMBER OF TIMES PER YEAR A LOCAL GOVERNMENT MAY AMEND ITS COMPREHENSIVE PLAN APPLIES ONLY TO PLANS OR AMENDED PLANS ADOPTED PURSUANT TO THE 1985 ACT?
 2. WHETHER THE 1985 ACT PREEMPTS THE SUPERVISORY AUTHORITY OF THE PINELLAS COUNTY PLANNING COUNCIL OVER COMPREHENSIVE LAND USE PLANS ADOPTED BY MUNICIPALITIES IN THE COUNTY AS PROVIDED BY SPECIAL ACT?
QUESTION ONE
The 1985 Legislature extensively amended the Local Government Comprehensive Planning Act of 1975, Part II, Ch. 163, F.S., and renamed it the "Local Government Comprehensive Planning and Land Development Regulation Act," (hereinafter the 1985 Act). See, Ch. 85-55, Laws of Florida; AGO 85-56. As stated in AGO 85-56, "[t]he amendments to the [former] act generally strengthen the role of comprehensive planning for local governments and modify the requirements and elements of the plan."
Section 163.3187(1), F.S., in pertinent part, now reads:
 Amendments to comprehensive plans adopted pursuant to this part may be made not more than two times during any calendar year, except, in the case of an emergency, comprehensive plan amendments may be made more often than twice during the calendar year if the additional plan amendment receives the approval of all of the members of the governing body. (e.s.)
The issue in question is whether the phrase "adopted pursuant to this part" applies only to comprehensive plans adopted pursuant to the 1985 Act. It is my conclusion that this phrase cannot be given this restrictive interpretation. The cardinal rule of statutory construction is that a statute should be construed so as to ascertain and give effect to the intention of the Legislature as expressed in the statute. City of Tampa v. Thatcher Glass Corp.,445 So.2d 578 (Fla. 1984); Parker v. State, 406 So.2d 1089
(Fla. 1981). That legislative intent when expressed with words of common usage must be determined by construing those words in their plain and ordinary sense. Citizens of State v. Public Service Commission, 425 So.2d 534 (Fla. 1982); Milazzo v. State,377 So.2d 1161 (Fla. 1979); Thayer v. State, 335 So.2d 815 (Fla. 1976). Finally, a statute, as amended, is to be construed as a consistent whole, in harmony with common sense and reason, and every part should be given effect if possible. Villery v. Florida Parole and Probation Commission, 396 So.2d 1107 (Fla. 1980); Tower Credit Corporation v. State, 187 So.2d 923 (4 D.C.A.Fla, 1966); 82 C.J.S. Statutes s. 384.
Applying these fundamental rules of statutory construction, it appears that the Legislature intended that the two amendments per year limitation contained in s. 163.3187, F.S., apply to all comprehensive plans adopted pursuant to Part II of Ch. 163, F.S. The phrase "this part" clearly applies to Part II of Ch. 163. The comprehensive plan provisions of Florida law have been contained in this same part since the original mandatory comprehensive planning law was enacted in 1975. The title to Ch. 85-55, Laws of Florida, the 1985 Act, clearly provides that the act is "amending part II of chapter 163," not creating a new part. To interpret the limitation as applying only to comprehensive plans adopted pursuant to the 1985 Act would create the anomalous result of limiting local governments which expeditiously bring their comprehensive plans into compliance with the 1985 Act to amending their plans only two times per year, while allowing other local governments to amend their plans without limitation. This interpretation would obviously operate to thwart the state legislative intent of the 1985 Act, "to protect human, environmental, social, and economic resources; and to maintain, through orderly growth and development, the character and stability of present and future land use and development in this state." I can ascertain no legislative intent which would permit the disparate application of the amendment limitation contained in s. 163.3187 to comprehensive plans adopted before and after the 1985 amendments.
I am therefore of the opinion that the provisions of s.163.3187(1), F.S., limiting the amendment of comprehensive plans to two times during any calendar year, except under the conditions specified therein, apply with equal force and effect to plans adopted pursuant to Part II of Ch. 163 prior to its amendment in 1985 as well as to plans adopted under the amended Act.
QUESTION TWO
You question whether the 1985 Act preempts the supervisory authority of the Pinellas County Planning Council (hereinafter PPC) over comprehensive land use plans adopted by municipalities in the county.
The PPC was created by special act, Ch. 73-594, Laws of Florida, as a countywide planning and coordination council. The Legislature, recognizing that individual plans and decisions heretofore made by local governments within Pinellas County affected the welfare of the entire county, established the PPC to provide a means for the formulation and execution of the objectives and policies necessary for the orderly growth, development and environmental protection of Pinellas County as a whole. Section 2, Ch. 73-594, supra. Section 5 of the special act, as amended, provides that the specific powers and duties of the council, include, among other things, the power to develop a countywide comprehensive plan and over-all development policy document, taking into consideration existing plans, development policies and proposals of the various local units of government.
In addition, the PPC has the power to adopt plans, codes and regulations for the provision of countywide water, sewerage and solid waste disposal systems; these plans, codes and regulations are effective countywide upon ratification by the board of county commissioners and by three-fourths (3/4) of the governing bodies of the municipalities in the county. And see, s. 9, Ch. 73-594, Laws of Florida, setting forth the procedure for the adoption of any plan, code or regulation called for under the provisions of this act and for the binding effect of such plans. Further, the council has the authority to review each element of the countywide comprehensive plan with the individual units of local government on an annual basis to assure coordination with local goals and policies. Chapter 74-584, Laws of Florida, amended the adoption procedure and required the PPC to, within a specified time period, develop and propose countywide subdivision regulations, a zoning code and master drainage plan to be effective within Pinellas County and all municipalities upon adoption by all units of local government within the county as provided in s. 9. of Ch. 73-594. Chapter 76-473, Laws of Florida, granted the PPC the additional power to review and make a recommendation to the affected municipality of each proposed annexation within Pinellas County to such municipality with reference to the ability of said municipality to provide municipal services to the territory which is proposed to be annexed, if the proposed area is 10 or more acres in size.
The special acts creating and pertaining to the powers and duties of the PPC establish the planning council as a local governmental agency separate and distinct from the county. While the county has the right to review and raise or reduce the budget of the PPC, see, s. 7, Ch. 73-594, Laws of Florida, as amended by s. 1, Ch. 74-584, Laws of Florida, the budget is prepared by council staff and approved by the council and the PPC is otherwise independent of the county in regard to the exercise of the council's duties and responsibilities for comprehensive planning and land use regulations in the county. See, e.g., ss. 5 and 7, Ch. 73-594, supra; s. 1, Ch. 74-584, Laws of Florida; and s. 6, Ch. 76-473, Laws of Florida. And see, s. 3, Ch. 73-594, Laws of Florida, providing for the appointment of the members of the PPC by various local governmental entities, the terms of office of members and the filling of vacancies.
In regard to a municipality's authority relating to comprehensive planning and land use regulations, subsection (1) of s. 163.3171, F.S., in relevant part, provides: "A municipality shall exercise authority under this act for the total area under its jurisdiction." Relevant to Pinellas County, subsection (2) of s.163.3171, now provides:
 A county shall exercise authority under this act for the total unincorporated area under its jurisdiction or in such unincorporated areas as are not included in any joint agreement with municipalities established under the provisions of subsection (1). In the case of chartered counties, the county may exercise such authority over municipalities or districts within its boundaries as is provided for in its charter. (e.s.)
See also, s. 163.3174(1)(b), F.S., providing that "[i]n the case of chartered counties, the planning responsibility between the county and the several municipalities therein shall be as stipulated in the charter."
The provisions of the Pinellas County Charter are set forth in Ch. 80-590, Laws of Florida. Section 5.02 of this charter provides, in relevant part, that special laws relating to or affecting Pinellas County and general laws of local application which apply only to Pinellas County, shall become county ordinances; except among other things, those laws relating to the Pinellas County Planning Council. Section 2.01 of the charter generally provides that a county ordinance shall prevail over a municipal ordinance when general law provides that a county ordinance shall prevail over a municipal ordinance, or when it concerns a power of local county government lawfully and constitutionally enacted by special law at the time of the adoption of the charter. While the charter provides for the continued force and effect of the special acts pertaining to the PPC, I am not aware of any provision of the Pinellas County Charter which provides that the county may exercise jurisdiction over municipal comprehensive planning and land use regulations.
You inquire whether the 1985 Act constitutes a preemption of the supervisory authority of the PPC. A general statute covering an entire subject matter, and manifestly designed to embrace all the regulations of the subject, may supersede a former statute covering only a portion of the subject, when such is the manifest legislative intent. State v. Dunmann, 427 So.2d 166 (Fla. 1983).
The 1985 Act, however, contains no expression of legislative intent that it preempts all prior enactments pertaining to comprehensive planning and land management regulations. The question of conflict between the 1985 Act and other laws presents a different legal issue. Generally, when a special act and a general law conflict, the special act will prevail. Rowe v. Pinellas Sports Authority, 461 So.2d 72 (Fla. 1984). However, where the general act is an overall revision or general restatement of law on the same subject, the special act will be presumed to have been superseded and repealed. Town of Palm Beach v. Palm Beach Local 1866 of International Association of Fire Fighters,275 So.2d 247 (Fla. 1973). The 1985 Act expressly deals with the question of conflict between the 1985 Act and other laws. Section163.3211, F.S., provides:
 Where this act may be in conflict with any other provision or provisions of law relating to local governments having authority to regulate the development of land, the provisions of this act shall govern unless the provisions of this act are met or exceeded by such other provision or provisions of law relating to local government, including land development regulations adopted pursuant to chapter 125 or chapter 166. Nothing in this act is intended to withdraw or diminish any legal powers or responsibilities of state agencies or change any requirement of existing law that local regulations comply with state standards or rules. (e.s.)
This provision resolves the issue when a conflict exists between the provisions of Ch. 73-594, Laws of Florida, as amended, and the 1985 Act. It further evinces a legislative intent that other provisions of law are to have continued force and effect to the extent that such laws are not in conflict with the 1985 Act or unless such other provisions of law meet or exceed the provisions of Part II of Ch. 163, F.S. However, laws should be construed together with any other law relating to the same purpose such that they are in harmony, and the courts will avoid a construction which places in conflict statutes which cover the same general field. City of Boca Raton v. Gidman, 440 So.2d 1277 (Fla. 1983); Wakulla County v. Davis, 395 So.2d 540 (Fla. 1981); District School Board of Lake County v. Talmadge, 381 So.2d 698 (Fla. 1980). And see, Villery v. Florida Parole and Probation Commission,396 So.2d 1107 (Fla. 1980), stating that whenever possible full effect must be given to all statutory provisions and statutes should be construed in harmony with each other; and Mann v. Goodyear Tire and Rubber Company, 300 So.2d 666 (Fla. 1974), in which the court said that when two statutes operate on the same subject without positive inconsistency or repugnancy, courts must construe them to preserve the force of both. The corollary to this rule is that the courts will find a conflict between statutes only in the case of a positive inconsistency or an irreconcilable repugnancy. See, Arnold v. State ex rel. Mallison, 2 So.2d 874 (Fla. 1941); Stewart v. DeLand-Lake Helen Special Road and Bridge Dist., 71 So. 42
(Fla. 1916).
As stated above, the 1985 Act expressly recognizes the continuing legal force and effect of other provisions of law relating to local government which meet or exceed the provisions of the 1985 Act, including land development regulations adopted pursuant to Ch. 125 or Ch. 166, F.S. Section 163.3211, F.S. For example, the PPC's authority under s. 5, Ch. 73-594, Laws of Florida, to review each element of the countywide comprehensive plan with the individual units of local government on an annual basis to assure coordination with local goals and policies does not appear to be in conflict with any provision of the 1985 Act. See, in this regard, subsection (4) of s. 163.3161, F.S., providing in pertinent part: "It is the intent of this act to encourage and assure coordination of planning and development activities of units of local government. . . ." However, in the absence of a specific question being presented to this office as to the PPC's continuing comprehensive planning authority, this office can state only that in the case of a positive inconsistency between the provisions of the 1985 Act and some other provisions of law relating to the PPC's authority to regulate the development of land, the provisions of the 1985 Act shall govern, except where the other provisions of law meet or exceed the provisions of the 1985 Act.
In conclusion, I am therefore of the opinion that, until and unless judicially determined otherwise, the provisions of s.163.3187(1), F.S., limiting the amendment of comprehensive plans to two times during any calendar year, except under the conditions specified therein, apply to all comprehensive plans adopted pursuant to Part II of Ch. 163, F.S., before and after the amendments by Ch. 85-55, Laws of Florida. The provisions of Part II of Ch. 163, F.S., do not expressly supersede or preempt other general or special laws dealing with comprehensive planning and land use development; however to the extent of any positive inconsistencies or irreconcilable repugnancy between the 1985 Act and any special act relating to Pinellas County, as provided in s.163.3211, F.S., the provisions of the 1985 Act are to govern unless the provisions of Part II of Ch. 163 are met or exceeded by such other provision or provisions of law relating to local governments having the authority to regulate the development of land.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General